T.C. Memo. 2007-28

UNITED STATES TAX COURT

GORDON AND ILENE FREEMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24215-04L.          Filed February 7, 2007.

<u>Terri A. Merriam</u>, for petitioners.

<u>Gregory M. Hahn</u> and <u>Thomas N. Tomashek</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Petitioners filed a petition with this Court in response to a Notice of Determination Concerning Collection Action(s) Under Section 6330 (notice of determination) for 1980 through 1985, 1989, and 1990.[1]  Pursuant to section 6330(d),

_____

    [1]  Unless otherwise indicated, all section references are to
                                                (continued...)

petitioners seek review of respondent's determination. The issue for decision is whether respondent abused his discretion in sustaining the proposed collection action.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The first, second, third, fourth, and fifth stipulations of fact and the attached exhibits are incorporated herein by this reference.[3]

---

[1](...continued)
the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

[2] Petitioners also dispute respondent's determination that they are liable for the increased rate of interest on tax-motivated transactions under sec. 6621(c). As to this dispute, the parties filed a stipulation to be bound by the Court's determination in Ertz v. Commissioner, T.C. Memo. 2007-15, which involves a similar issue.

[3] Respondent reserved relevancy objections to many of the exhibits attached to the stipulations of fact. Fed. R. Evid. 402 provides the general rule that all relevant evidence is admissible, while evidence which is not relevant is not admissible. Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." While the relevance of some exhibits is certainly limited, we find that the exhibits meet the threshold definition of relevant evidence and are admissible. The Court will give the exhibits only such consideration as is warranted by their pertinence to the Court's analysis of petitioners' case.

Respondent also objected to many of the exhibits on the basis of hearsay. Even if we were to receive those exhibits into evidence, they would have no impact on our findings of fact or on the outcome of this case.

Petitioners resided in Richland, Washington, when they filed their petition.  Petitioners have been married for 46 years. Petitioner Gordon Freeman (Mr. Freeman) is an electrical engineer, and petitioner Ilene Freeman (Mrs. Freeman) has a bachelor of science degree in home economics education.  At the time of trial, Mr. Freeman was 69 years old.  Mrs. Freeman's age is not in the record.

In 1983, petitioners became partners in Durham Genetic Engineering, Ltd. 1983-3 (DGE 83-3), a cattle breeding partnership organized and operated by Walter J. Hoyt III (Hoyt).[4]

From about 1971 through 1998, Hoyt organized, promoted, and operated more than 100 cattle breeding partnerships.  Hoyt also organized, promoted, and operated sheep breeding partnerships. From 1983 to his subsequent removal by the Tax Court in 2000 through 2003, Hoyt was the tax matters partner of each Hoyt partnership.  From approximately 1980 through 1997, Hoyt was a licensed enrolled agent, and as such, he represented many of the Hoyt partners before the Internal Revenue Service (IRS).  In

---

[4] Petitioners were also partners in other Hoyt-related partnerships identified as Timeshare Breeding Services 1987-2 J.V., Timeshare Breeding Syndicate J.V., and Timeshare Breeding Services 1989-2 J.V.  The details of these partnerships are not in the record. Though unclear, it appears that all adjustments made to petitioners' income tax liability for 1980-85 were attributable to their involvement in DGE 83-3 only, while the adjustments pertaining to 1989 and 1990 were attributable to the other partnerships.

1998, Hoyt's enrolled agent status was revoked.  Hoyt was convicted of various criminal charges in 2000.[5]

Beginning in 1983 until at least 1990, petitioners claimed losses and credits on their Federal income tax returns arising from their involvement in the Hoyt partnerships.  Petitioners also carried back unused investment credits to 1980, 1981, and 1982.  As a result of these losses and credits, petitioners reported overpayments of tax for 1980 through 1985, 1989, and 1990 and received refunds in the amounts claimed.

---

[5]  Petitioners ask the Court to take judicial notice of certain "facts" in other Hoyt-related cases and apply judicial estoppel to "facts respondent has asserted in previous [Hoyt-related] litigation".  We do neither.

A judicially noticeable fact is one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Petitioners are not asking the Court to take judicial notice of facts that are not subject to reasonable dispute.  Instead, petitioners are asking the Court to take judicial notice of the truth of assertions made by taxpayers and the Commissioner in other Hoyt-related cases.  Such assertions are not the proper subject of judicial notice.

The doctrine of judicial estoppel prevents a party from asserting in a legal proceeding a claim that is inconsistent with a position successfully taken by that party in a previous proceeding.  New Hampshire v. Maine, 532 U.S. 742, 749 (2001).  Among the requirements for judicial estoppel to be invoked, a party's current litigating position must be "clearly inconsistent" with a prior litigating position.  Id. at 750-751.  Petitioners have failed to identify any clear inconsistencies between respondent's current position and his position in any previous litigation.

Respondent issued notices of final partnership administrative adjustments (FPAAs) to DGE 83-3 for its 1983 through 1985 taxable years.[6]  After completion of the partnership-level proceedings, respondent determined deficiencies in petitioners' income tax for their 1980 through 1985 tax years.[7]

On February 6, 2003, respondent issued petitioners a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice).  The final notice included petitioners' outstanding tax liabilities for 1980 through 1985, 1989, and 1990.

On February 21, 2003, petitioners submitted a Form 12153, Request for a Collection Due Process Hearing.  Petitioners argued that the proposed levies were inappropriate, that an offer-in-compromise should be accepted, and that Mrs. Freeman was entitled to innocent spouse relief under section 6015.

On November 14, 2003, petitioners' case was assigned to Settlement Officer Linda Cochran (Ms. Cochran).  Ms. Cochran scheduled a telephone section 6330 hearing for March 31, 2004.  Petitioners' representative, Terri A. Merriam (Ms. Merriam),

---

[6]  The FPAAs and other information specific to DGE 83-3's partnership-level proceedings are not in the record.

[7]  The details regarding the adjustments made to petitioners' tax liability for 1989 and 1990 are not in the record.

requested that petitioners be given more time to submit information to be considered. Ms. Cochran extended petitioners' deadline for submitting information to be considered to May 14, 2004.

Petitioners' section 6330 hearing was conducted by telephone on March 31, 2004. On May 14, 2004, petitioners submitted to Ms. Cochran a Form 656, Offer in Compromise, a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, one letter explaining the offer amount, and three letters setting out in detail petitioners' position regarding the offer-in-compromise. Petitioners' letters included several exhibits.

The Form 656 indicated that petitioners were seeking an offer-in-compromise based on effective tax administration. Petitioners offered to pay $346,258 to compromise their outstanding tax liabilities for 1980 through 1996.[8] At the time of the section 6330 hearing, $750,740 had been assessed against petitioners with respect to their 1980 through 1996 tax years.

On the Form 433-A, petitioners reported assets worth $832,866 and outstanding liabilities of $56,359.

_____

[8] The details of petitioners' 1986-88 and 1991-96 taxable years are not in the record.

Petitioners also reported gross monthly income of $9,307 and monthly living expenses of $6,238.

In the letter explaining the offer amount, petitioners stated that they were offering to pay $346,258 "for all Hoyt related years to be paid in one lump sum payment. The amount accounts for all the tax liability for 1980 through 1998, and regular interest through April 15, 1993. This offer assumes that no Tax Motivated Transaction (TMT) interest is imposed". Petitioners also noted that Mrs. Freeman had an innocent spouse case pending before the Tax Court at docket No. 18985-02 for her 1980 through 1986 and 1994 tax years.

In the remaining three letters, petitioners alleged that they were victims of Hoyt's fraud and asserted various arguments regarding the appropriateness of an offer-in-compromise.

On May 21, 2004, petitioners submitted another letter to Ms. Cochran, which included 42 exhibits not provided with the previous letters.

On November 23, 2004, respondent issued petitioners a notice of determination. Respondent determined that petitioners had: (1) Total net realizable equity in their assets of $917,913; (2) an amount collectible from future

income of \$369,639;[9] and (3) a reasonable collection potential of \$1,287,552.

Because petitioners had "the ability to pay all assessed amounts and still have assets and an income stream remaining worth over \$536,000", respondent determined that they were not entitled to an effective tax administration offer-in-compromise based on economic hardship.[10] Respondent also determined that petitioners were not entitled to an effective tax administration offer-in-compromise based on public policy or equity ground because the case "fails to meet the criteria for such consideration".

Respondent determined that petitioners did not offer an acceptable collection alternative and that all requirements of law and administrative procedure had been met. Respondent concluded that the proposed collection action could proceed, but that the final notice should be partially rescinded as it related to Mrs. Freeman's 1980 through 1985 tax years because of her pending innocent spouse case.

---

[9] Respondent determined that petitioners had monthly disposable income of \$5,517 and multiplied that amount by 67, the number of months remaining on the collection statute.

[10] Petitioners do not argue that their effective tax administration offer-in-compromise should have been accepted on the ground of economic hardship. See infra note 12.

In response to the notice of determination, petitioners filed a petition with this Court on December 20, 2004.

                              OPINION

Section 7122(a) provides that "The Secretary may compromise any civil * * * case arising under the internal revenue laws". Whether to accept an offer-in-compromise is left to the Secretary's discretion. Fargo v. Commissioner, 447 F.3d 706, 712 (9th Cir. 2006), affg. T.C. Memo. 2004-13; sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

The regulations under section 7122(a) set forth three grounds for the compromise of a tax liability: (1) Doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Doubt as to liability and doubt as to collectibility are not at issue in this case.[11]

As pertinent here, the Secretary may compromise a tax liability on the ground of effective tax administration when: (1) Exceptional circumstances exist such that collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner; and (2) compromise of the liability would not undermine compliance by

_____

[11] While petitioners contest their liability for sec. 6621(c) interest, see supra note 2, they did not raise doubt as to liability as a basis for their offer-in-compromise.

taxpayers with the tax laws.[12]  Sec. 301.7122-1(b)(3), Proced. &
Admin. Regs.

Petitioners proposed an offer-in-compromise based on
effective tax administration.  Petitioners offered to pay
$346,258 to compromise their outstanding tax liabilities for 1980
through 1996, which totaled $750,740 at the time of the section
6330 hearing.[13]  Petitioners argued that exceptional
circumstances existed such that collection of the full liability
would undermine public confidence that the tax laws are being
administered in a fair and equitable manner.  Respondent
determined that petitioners' reasonable collection potential was
$1,287,552 and that their offer-in-compromise did not meet the
criteria for an effective tax administration offer-in-compromise.

---

[12]  The regulations also provide that the Secretary may
compromise a liability on the ground of effective tax
administration when collection of the full liability will create
economic hardship.  See sec. 301.7122-1(b), Proced. & Admin.
Regs.  Respondent determined that petitioners were not entitled
to an offer-in-compromise based on economic hardship.  While
petitioners dispute Ms. Cochran's determination of their
reasonable collection potential, they do not argue that
collection of the full liability would create economic hardship.

[13]  The proposed collection action related to petitioners'
outstanding tax liability for 1980-85, 1989, and 1990 only.
Petitioners estimated that their outstanding tax liability for
those periods was $474,655.  However, petitioners sought to
compromise their outstanding tax liability for not only those
periods, but also for 1986-88 and 1991-96.  To accurately compare
their offer amount to their outstanding tax liability, we must
therefore consider the total assessed amount for 1980-96, and not
for only 1980-85, 1989 and 1990.

Because the underlying tax liability is not at issue, our review under section 6330 is for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). This standard does not ask us to decide whether in our own opinion petitioners' offer-in-compromise should have been accepted, but whether respondent's rejection of the offer-in-compromise was arbitrary, capricious, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo. 2006-166; Fowler v. Commissioner, T.C. Memo. 2004-163.

## A.    Exceptional Circumstances

Petitioners assert that "There are so many unique and equitable facts in this case that this case is an exceptional circumstance" and respondent abused his discretion by not accepting those facts as grounds for an offer-in-compromise. In support of their assertion, petitioners argue: (1) The longstanding nature of this case justifies acceptance of the offer-in-compromise; (2) respondent's reliance on an example in the Internal Revenue Manual (IRM) was improper; and (3) respondent failed to consider petitioners' other "equitable facts".

### 1.    Longstanding Case

Petitioners assert that the legislative history requires respondent to resolve "longstanding" cases by forgiving penalties

and interest which would otherwise apply.  Petitioners argue that, because this is a longstanding case, respondent abused his discretion by failing to accept their offer-in-compromise.

Petitioners' argument is essentially the same considered and rejected by the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, supra at 711-712.  See also Keller v. Commissioner, T.C. Memo. 2006-166; Barnes v. Commissioner, supra. We reject petitioners' argument for the same reasons stated by the Court of Appeals.  We add that petitioners' counsel participated in the appeal in Fargo as counsel for the amici.  On brief, petitioners suggest that the Court of Appeals knowingly wrote its opinion in Fargo in such a way as to distinguish that case from the cases of counsel's similarly situated clients (e.g., petitioners), and to otherwise allow those clients' liabilities for penalties and interest to be forgiven.  We do not read the opinion of the Court of Appeals in Fargo to support that conclusion.  See Keller v. Commissioner, supra; Barnes v. Commissioner, supra.

Respondent's rejection of petitioners' longstanding case argument was not arbitrary or capricious.

2.   The IRM Example

Petitioners argue that respondent erred when he determined that they were not entitled to relief based on the second example in IRM section 5.8.11.2.2(3).  Petitioners assert that many of

the facts in this case were not present in the example, and, therefore, any reliance on the example was misplaced. Petitioners' argument is not persuasive.

IRM section 5.8.11.2.2(3) discusses effective tax administration offers-in-compromise based on equity and public policy grounds and states in the second example:

> In 1983, the taxpayer invested in a nationally marketed partnership which promised the taxpayer tax benefits far exceeding the amount of the investment. Immediately upon investing, the taxpayer claimed investment tax credits that significantly reduced or eliminated the tax liabilities for the years 1981 through 1983. In 1984, the IRS opened an audit of the partnership under the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA). After issuance of the Final Partnership Administrative Adjustment (FPAA), but prior to any proceedings in Tax Court, the IRS made a global settlement offer in which it offered to concede a substantial portion of the interest and penalties that could be expected to be assessed if the IRS's determinations were upheld by the court. The taxpayer rejected the settlement offer. After several years of litigation, the partnership level proceeding eventually ended in Tax Court decisions upholding the vast majority of the deficiencies asserted in the FPAA on the grounds that the partnership's activities lacked economic substance. The taxpayer has now offered to compromise all the penalties and interest on terms more favorable than those contained in the prior settlement offer, arguing that TEFRA is unfair and that the liabilities accrued in large part due to the actions of the Tax Matters Partner (TMP) during the audit and litigation. Neither the operation of the TEFRA rules nor the TMP's actions on behalf of the taxpayer provide grounds to compromise under the equity provision of paragraph (b)(4)(i)(B) of this section. Compromise on those grounds would undermine the purpose of both the penalty and interest provisions at issue and the consistent settlement principles of TEFRA. * * *

1 Administration, Internal Revenue Manual (CCH), sec.

5.8.11.2.2(3), at 16,378. We agree with respondent that the example presents circumstances similar to those in petitioners' case, including: Petitioners invested in TEFRA partnerships in the early 1980s; petitioners' outstanding tax liability is related to their investment in the partnerships; FPAAs were issued to the partnerships; respondent proposed a settlement offer which petitioners rejected;[14] after several years of litigation, Tax Court decisions upheld the vast majority of the deficiencies asserted in the FPAAs; and petitioners argue that interest has accumulated as the result of delays by and other actions of the tax matters partner.

Petitioners are also correct in asserting that not all the facts in their case are present in the example. However, it is unreasonable to expect that facts in an example be identical to facts of a particular case before the example can be relied upon. The IRM example was only one of many factors respondent considered. Given the similarities to petitioners' case, respondent's reliance on that example was not arbitrary or capricious.

3. Petitioners' Other "Equitable Facts"

Petitioners argue that respondent abused his discretion by failing to consider the other "equitable facts" of this case.

_____

[14] Mr. Freeman testified that he received a settlement offer, but the details of the settlement offer are not in the record.

Petitioners' "equitable facts" include reference to: (1) Petitioners' reliance on Bales v. Commissioner, T.C. Memo. 1989-568;[15] (2) petitioners' reliance on Hoyt's enrolled agent status; (3) Hoyt's criminal conviction; (4) Hoyt's fraud on petitioners; and (5) other letters and cases. The basic thrust of petitioners' argument is that they were defrauded by Hoyt and that, if they were held responsible for penalties and interest incurred as a result of their investment in a tax shelter, it would be inequitable and against public policy. Petitioners' argument is not persuasive.

While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two examples. See sec. 301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs. The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years. The

---

[15] Bales v. Commissioner, T.C. Memo. 1989-568, involved deficiencies determined against various investors in several Hoyt partnerships. This Court found in favor of the investors on several issues, stating that "the transaction in issue should be respected for Federal income tax purposes." Taxpayers in many Hoyt-related cases have used Bales as the basis for a reasonable cause defense to accuracy-related penalties. This argument has been uniformly rejected by this Court and by the Courts of Appeals for the Sixth, Ninth, and Tenth Circuits. See, e.g., Hansen v. Commissioner, 471 F.3d 1021 (9th Cir. 2006), affg. T.C. Memo. 2004-269; Mortensen v. Commissioner, 440 F.3d 375, 390-391 (6th Cir. 2006), affg. T.C. Memo. 2004-279; Van Scoten v. Commissioner, 439 F.3d 1243, 1254-1256 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions.  Neither example bears any resemblance to this case. Unlike the exceptional circumstances exemplified in the regulations, petitioners' situation is neither unique nor exceptional in that their situation mirrors those of numerous other taxpayers who claimed tax shelter deductions in the 1980s and 1990s.  See Keller v. Commissioner, T.C. Memo. 2006-166; Barnes v. Commissioner, T.C. Memo. 2006-150.

Of course, the examples in the regulations are not meant to be exhaustive, and petitioners have a more sympathetic case than the taxpayers in Fargo v. Commissioner, 447 F.3d at 714, for whom the Court of Appeals for the Ninth Circuit noted that "no evidence was presented to suggest that Taxpayers were the subject of fraud or deception".  Such considerations, however, have not kept this Court from finding investors in the Hoyt tax shelters to be liable for penalties and interest, nor have they prevented the Courts of Appeals for the Sixth, Ninth, and Tenth Circuits from affirming our decisions to that effect.  See Hansen v. Commissioner, 471 F.3d 1021 (9th Cir. 2006), affg. T.C. Memo. 2004-269; Mortensen v. Commissioner, 440 F.3d 375 (6th Cir. 2006), affg. T.C. Memo. 2004-279; Van Scoten v. Commissioner, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

Ms. Cochran testified that she considered all of Ms. Merriam's and petitioners' assertions, including the numerous letters and exhibits. Nevertheless, Ms. Cochran determined that petitioners did not qualify for an offer-in-compromise.

The mere fact that petitioners' "equitable facts" did not persuade respondent to accept their offer-in-compromise does not mean that those assertions were not considered. The notice of determination and Ms. Cochran's testimony demonstrate respondent's clear understanding and careful consideration of the facts and circumstances of petitioners' case. We find that respondent's determination that the "equitable facts" did not justify acceptance of petitioners' offer-in-compromise was not arbitrary or capricious, and thus it was not an abuse of discretion.

We also find that compromising petitioners' case on grounds of public policy or equity would not enhance voluntary compliance by other taxpayers. A compromise on that basis would place the Government in the unenviable role of an insurer against poor business decisions by taxpayers, reducing the incentive for taxpayers to investigate thoroughly the consequences of transactions into which they enter. It would be particularly inappropriate for the Government to play that role here, where the transaction at issue is participation in a tax shelter. Reducing the risks of participating in tax shelters would

encourage more taxpayers to run those risks, thus undermining rather than enhancing compliance with the tax laws.  See Barnes v. Commissioner, supra.

B.    Petitioners' Other Arguments

1.    Compromise of Penalties and Interest in an Effective Tax Administration Offer-in-Compromise

Petitioners advance a number of arguments focusing on their assertion that respondent determined that penalties and interest could not be compromised in an effective tax administration offer-in-compromise.  Petitioners argue that such a determination is contrary to legislative history and is therefore an abuse of discretion.  These arguments are not persuasive.

The regulations under section 7122 provide that "If the Secretary determines that there are grounds for compromise under this section, the Secretary may, at the Secretary's discretion, compromise any civil * * * liability arising under the internal revenue laws".  Sec. 301.7122-1(a)(1), Proced. & Admin. Regs.  In other words, the Secretary may compromise a taxpayer's tax liability if he determines that grounds for a compromise exist. If the Secretary determines that grounds do not exist, the amount offered (or the way in which the offer is calculated) need not be considered.

Petitioners' arguments regarding the compromise of penalties and interest do not relate to whether there are grounds for a compromise.  Instead, these arguments go to whether the amount petitioners offered to compromise their tax liability was acceptable.  As addressed above, respondent's determination that the facts and circumstances of petitioners' case did not warrant acceptance of their offer-in-compromise was not arbitrary or capricious and was thus not an abuse of discretion.  Because no grounds for compromise exist, we need not address whether respondent can or should compromise penalties and interest in an effective tax administration offer-in-compromise.  See Keller v. Commissioner, supra.

2.  Information Sufficient for the Court To Review Respondent's Determination

Petitioners argue that respondent failed to provide the Court with sufficient information "so that this Court can conduct a thorough, probing, and in-depth review of respondent's determinations."  Petitioners' argument is without merit.

Generally, a taxpayer bears the burden of proving the Commissioner's determinations incorrect.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).[16]  The burden was on

_____

[16]  While sec. 7491 shifts the burden of proof and/or the burden of production to the Commissioner in certain circumstances, this section is not applicable in this case because respondent's examination of petitioners' returns did not commence after July 22, 1998.  See Internal Revenue Service
(continued...)

petitioners to show that respondent abused his discretion.  The burden was not on respondent to provide enough information to show that he did not abuse his discretion.  Nevertheless, we find that we had more than sufficient information to review respondent's determination.

3.  Deadline for Submission of Information

Petitioners argue that Ms. Cochran abused her discretion by not allowing their counsel additional time to submit information to be considered.  Petitioners' argument is not supported by the record.

Petitioners assert that they were "initially only given four weeks" to provide all information.  However, they ignore the fact that Ms. Cochran granted their requested extension and allowed them until May 14, 2004, to submit information.  Additionally, petitioners have not identified any documents or other information that they believe Ms. Cochran should have considered but that they were unable to produce because of the deadline for submission.  Given the thoroughness and the amount of information submitted, it is unclear why petitioners needed additional time.  We do not believe that Ms. Cochran abused her discretion by establishing a deadline for the submission of information.

---

[16](...continued)
Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

4.  Mrs. Freeman's Pending Innocent Spouse Claim

At the time of the section 6330 hearing, Mrs. Freeman had an innocent spouse case pending before the Tax Court at docket No. 18985-02 for her 1980 through 1986 and 1994 tax years.  In their petition, petitioners argued that, because of Mrs. Freeman's pending innocent spouse case:  (1) Respondent abused his discretion by considering the assets of both spouses; and (2) the notice of intent to levy was invalid against Mrs. Freeman.

Petitioners did not argue on brief that respondent abused his discretion by considering the assets of both spouses. Therefore, we conclude that petitioners have abandoned this argument.  Even so, we do not find that Ms. Cochran's consideration of the assets of both spouses was arbitrary or capricious.  In the final notice, respondent proposed to levy against petitioners' assets to collect their outstanding tax liabilities for 1980 through 1985, 1989, and 1990.  Because her innocent spouse case did not include 1989 and 1990, Mrs. Freeman's assets were exposed to collection of her outstanding tax liabilities for those years.

Petitioners continued to argue on brief that the notice of intent to levy was invalid against Mrs. Freeman.  This issue is moot.  Section 6015(e)(1)(B)(i) provides:

> no levy * * * shall be made, begun, or prosecuted
> against the individual making an election under
> subsection (b) or (c) [relating to innocent spouse
> relief] for collection of any assessment to which such

> election relates * * * if a petition has been filed
> with the Tax Court * * * until the decision of the Tax
> Court has become final.

Accordingly, respondent determined that the final notice would be rescinded as it related to Mrs. Freeman's 1980 through 1985 tax years.

### 5. Efficient Collection Versus Intrusiveness

Petitioners argue that respondent failed to balance the need for efficient collection of taxes with the legitimate concern that the collection action be no more intrusive than necessary. See sec. 6330(c)(3)(C). Petitioners' argument is not supported by the record.

Petitioners have an outstanding tax liability. In their section 6330 hearing, petitioners proposed only an offer-in-compromise. Because no other collection alternatives were proposed, there were not less intrusive means for respondent to consider. We find that respondent balanced the need for efficient collection of taxes with petitioners' legitimate concern that collection be no more intrusive than necessary.

### C. Conclusion

Petitioners have not shown that respondent's determination was arbitrary or capricious, or without sound basis in fact or law. For all of the above reasons, we hold that respondent's determination was not an abuse of discretion, and respondent may

proceed with the proposed collection action as determined in the notice of deficiency.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.