T.C. Memo. 2007-73

UNITED STATES TAX COURT

MARTIN AND SHARON SMITH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3876-05L.                    Filed March 29, 2007.


<u>Wendy S. Pearson</u>, <u>Terri A. Merriam</u>, <u>Jennifer A. Gellner</u>,

<u>Jaret R. Coles</u>, and <u>Asher B. Bearman</u>, for petitioners.[1]

<u>Thomas N. Tomashek</u> and <u>Gregory M. Hahn</u>, for respondent.

---

[1] Wendy S. Pearson (Pearson), Terri A. Merriam (Merriam),
Jennifer A. Gellner (Gellner), and Jaret R. Coles entered their
appearances in this case by subscribing the petition commencing
this proceeding.  See Rule 24(a).  (Unless otherwise indicated,
Rule references are to the Tax Court Rules of Practice and
Procedure, and section references are to the applicable versions
of the Internal Revenue Code.)  Asher B. Bearman entered his
appearance on July 18, 2005, and withdrew on Nov. 17, 2006.
Pearson and Gellner withdrew from the case on Oct. 24 and Nov.
14, 2006, respectively.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  Petitioners Martin Smith (Smith) and Sharon Smith petitioned the Court under section 6330(d) to review the determination of respondent's Office of Appeals (Appeals) sustaining a proposed levy related to petitioners' assessed Federal income tax liability (inclusive of additions to tax, penalties, and interest) for 1984, 1985, 1986, and 1991; that liability totaled $79,461.  Petitioners argue that the proposed levy is improper because, they argue, Appeals was required to accept their offer to pay $11,552 to compromise their assessed and unassessed Federal income tax liability (inclusive of additions to tax, penalties, and interest) for 1984 through 1996; petitioners estimate that liability to total $265,023.  We decide whether Appeals abused its discretion in rejecting petitioners' offer.  We hold it did not.[2]

---

[2] Petitioners also dispute a determination by Appeals concerning their liability for increased interest under sec. 6621(c).  As to this dispute, the parties agreed to be bound by a final decision in Ertz v. Commissioner, docket No. 20336-04L, which involved a similar issue.  On Jan. 24, 2007, the Court held in Ertz v. Commissioner, T.C. Memo. 2007-15, that the Court lacks jurisdiction to decide the issue to which the parties agreed to be bound.  On the basis of Ertz v. Commissioner, supra, we shall dismiss for lack of jurisdiction the portion of this case that concerns petitioners' liability for increased interest under sec. 6621(c).

## FINDINGS OF FACT

The parties filed with the Court stipulations of fact and accompanying exhibits. The stipulated facts are found accordingly. Petitioners are husband and wife, and they resided in Tucson, Arizona, when their petition was filed.

On their Federal income tax returns beginning in 1984, petitioners claimed losses and credits from their investment in several partnerships organized and operated by Walter J. Hoyt III (Hoyt). The partnerships were subject to the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648. Hoyt was convicted on criminal charges relating to the promotion of these partnerships.

Petitioners' claim to the partnerships' losses and credits resulted in the underreporting of their personal 1984, 1985, 1986, and 1991 Federal income taxes. On November 13, 2003, respondent mailed to petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing. The notice informed petitioners that respondent proposed to levy on their property to collect amounts owed as to their 1984, 1985, 1986, and 1991 Federal income taxes; all of these amounts were attributable to the just referenced underreporting of income. The notice advised petitioners that they were entitled to a

hearing with Appeals to review the propriety of the proposed levy.

On December 2, 2003, petitioners requested the referenced hearing with Appeals.  The request asserted in relevant part that the proposed levy was inappropriate because:  (1) Petitioners were entitled to compromise their liability on account of effective tax administration, given, they claimed, that the Hoyt partnership cases were "longstanding" and petitioners were the "unwitting victims" of fraud perpetrated by Hoyt; (2) interest was required to be abated under section 6404(e), an issue, petitioners noted, then pending before the Court of Appeals for the Sixth Circuit in Mekulsia v. Commissioner, 389 F.3d 601 (6th Cir. 2004), affg. T.C. Memo. 2003-138; (3) the Commissioner's imposition of tax-motivated interest for 1984 through 1986 was inappropriate given the facts of the case; and (4) petitioners were not given an opportunity to be heard during the examination of the Hoyt partnerships in that, they claimed, they were represented by Hoyt who had an impermissible conflict of interest and was thus incapable of representing them properly.

On May 12, 2004, Nancy Driver (Driver), a settlement officer in Appeals, contacted petitioners with respect to their request by mailing a letter to Merriam, petitioners' representative as stated on a power of attorney.  The letter, a copy of which was mailed to petitioners, stated that Driver would contact

petitioners to schedule the hearing and asked petitioners to tender the following items to Driver before the Hearing so that she could explore a resolution: "Your proposal to resolve the outstanding balance"; "Any documentation supporting your position on any issue you wish to discuss"; "Completed and signed Form 433-A, Collection Information Statement for [Wage Earners and Self-Employed] Individuals, along with supporting documentation"; "Completed and signed Form 433-B, Collection Information Statement for Businesses, along with supporting documentation. This is required only if you own or have interest in a business". The letter stated that petitioners should provide the referenced information to Driver by June 2, 2004. Pursuant to the request of Gellner, who was also listed in a power of attorney as petitioners' representative, Driver extended the June 2, 2004, date until June 30, 2004.

On June 29, 2004, petitioners submitted to Driver four letters with accompanying exhibits; a signed and completed Form 656, Offer in Compromise, with an accompanying payment of a related $150 fee; and a signed and completed Form 433-A with supporting documentation. Through this submission, petitioners offered to pay the Commissioner $11,552 to compromise what they estimated was their $265,023 assessed and unassessed Federal income tax liability (inclusive of additions to tax, penalties, and interest) for 1984 through 1996. Each of the four letters

included in the submission related to a different topic designated by petitioners as such, the four topics being: (1) A presentation of the facts and arguments related to the hearing, including an explanation of the offer amount and medical and retirement considerations; (2) a delay in the determination and assessment of their liabilities due to the criminal investigation of Hoyt; (3) effective tax administration; and (4) tax-motivated interest under section 6621(c). The Form 656 was signed by each petitioner on June 14, 2004, and stated that petitioners were making their offer-in-compromise on the grounds of effective tax administration and doubt as to collectibility. The Form 433-A was signed by each petitioner on June 14, 2004, and reported that petitioners owned the following assets with a current value (net of reported liabilities) of $124,038:[3]

| | | |
|---|---|---|
| Checking account | | $933 |
| Money market account | | 576 |
| IRAs[1]: | | |
| Vanguard | 25,529 | |
| Zurich | 31,161 | 56,690 |
| Stock of GE/Motorola | | 8,165 |
| Vehicles: | | |
| Ford Ranger | 7,085 | |
| Less loan balance | 10,997 | |
| | (3,912) | |
| Mercury Grand Marquis | 4,920 | 1,008 |

_____

[3] Form 433-A states that each asset reported on the form should be valued at its "Current value", defined on the form as "the amount you could sell the asset for today".

```
Home²                              160,648
Less mortgage loan balance        103,982      56,666
                                              124,038
```

¹ The reported values of the IRAs (individual retirement accounts) equal 70 percent of their account balances. Petitioners reported the lesser values to reflect their liability for income tax on a liquidation of the accounts.

² The reported value equals the home's assessed value.

The Form 433-A reported that petitioners had no disposable income, listing that their monthly income totaled $3,223 and their monthly living expenses totaled $4,042.[4]  The income was reportedly attributable to Smith's receipt of Social Security and/or a pension.[5]  The living expenses were reportedly attributable to the following items:

```
Food, clothing, and miscellaneous:      $801
Housing and utilities:                 ¹1,360
Transportation:                         ²715
Health care:                            ³262
Taxes (income and FICA):                 130
Life insurance:                          259
Attorney fees:                          ⁴479
                                        4,006
```

¹ The Form 433-A reports that petitioners' monthly payment on their mortgage loan was $899 and that they were required to make these payments until 2026.

² The Form 433-A reports that petitioners' monthly payment on their car loan was $349.

³ Petitioners told Driver that they were experiencing

---

[4] The listed expenses reported as totaling $4,042 actually total $4,006.

[5] Petitioners' 2003 Federal income tax return reported that they had $34,885 of adjusted gross income and $14,798 of taxable income.

various medical complications and were required to take various prescription and other medications. Petitioners never claimed to Driver that the monthly cost of these complications and medications exceeded their reported monthly health care costs.

[4] These attorney fees are apparently related to this litigation.

By way of a letter dated October 18, 2004, Driver notified petitioners that she had scheduled their hearing (requested by petitioners as a telephonic hearing) for November 18, 2004. The letter also stated that Driver had learned from third parties that petitioners apparently owned certain assets which were not reported on their Form 433-A, specifically, an IRA valued at $54,405 with Indianapolis Life Insurance Company (Indianapolis Life); two lots of real estate sited in Apache County, Arizona; and one lot of real estate sited in Pima County, Arizona. In reply to the letter's request that petitioners explain why the referenced assets were not included on the Form 433-A, petitioners, on October 28, 2004, acknowledged that they owned the IRA with Indianapolis Life and the lots of real estate and that they had left those assets off of their Form 433-A. Petitioners stated in the letter that the IRA had been overlooked in preparing the Form 433-A. Petitioners stated in the letter that they had forgotten about the three unreported lots which, they stated, were worthless.

On November 18, 2004, Driver held the scheduled hearing with petitioners' counsel. At that time, Smith and his wife were 68

and 64 years old, respectively.  Driver made the following calculation in determining that petitioners' net realizable equity in assets was $161,844:

Assets and Liabilities Reported on Form 433-A

| | | |
|---|---|---|
| IRAs: | | |
| Vanguard | 25,529 | |
| Zurich | 31,161 | 56,690 |
| Stock of GE/Motorola | | 8,165 |
| Home | 160,648 | |
| Less mortgage loan balance | 103,982 | 56,666 |
| | | 121,521 |
| Other Assets | | |
| IRA:  Indianapolis Life | | [1]38,823 |
| Lots in Apache and Pima Counties | | [2]1,500 |
| | | 40,323 |
| Net realizable equity in assets | | 161,844 |

[1] This amount equals 70 percent of the $55,462 balance in this account as of Sept. 30, 2004.

[2] This amount equals $1,300 less than the total assessed values of these lots.

Driver calculated petitioners' reasonable collection potential to be $161,844, the same amount as their net realizable equity in assets; in other words, Driver determined that petitioners had no disposable income.

On January 26, 2005, Appeals issued petitioners the notice of determination sustaining the proposed levy as to 1984, 1985, 1986, and 1991.  The notice reflects Driver's conclusion that petitioners' offer of $11,552 was inadequate under the applicable guidelines and that the proposed levy balances the need for the

efficient collection of taxes with the concern that the proposed levy be no more intrusive than necessary. As to the former conclusion, the notice states:

> Taxpayers challenged the proposed enforcement collection action by levy.
>
> Taxpayers submitted an Offer in Compromise, Doubt as to Collectibility and Effective Tax Administration, in the amount of $11,552.00 during the CDP proceedings. The OIC was not an acceptable collection alternative and was rejected.
>
> Taxpayers did not disclose all assets on the Collection Information Statements attached to the offer. They did not disclose assets which constituted about 25% of their net realizable equity. By not disclosing their complete financial status, this Appeals Officer is concerned about their good faith effort to resolve this matter. They were not forthcoming in establishing their financial status.
>
> This Appeals Officer concluded the offer should not be accepted under doubt as to collectibility because taxpayers have sufficient assets to pay the assessed liability. Further, the offer should not be accepted under effective tax administration as it would undermine compliance by taxpayers with the tax laws.
>
> Taxpayers included in the offer years that have unresolved TEFRA issues, thus the liability has not been assessed. During the Collection Due Process proceedings taxpayers did not resolve the years with TEFRA issues by entering into settlement agreements.
>
> Taxpayers did not propose any other acceptable collection alternatives. Taxpayers declined to pay the outstanding liability.
>
> The proposed collection enforcement action by levy is valid and appropriate.

The notice further states:

> The proposed collection action by levy balances the need for the efficient collection of taxes with the

concern that collection action be no more intrusive than necessary.  Taxpayer [sic] did not propose any acceptable collection alternatives.

The notice of determination also addresses the other claims made by petitioners in their request for a hearing, in support of their assertion that the proposed levy was inappropriate.  First, the notice notes that the Court of Appeals for the Sixth Circuit held in Mekulsia v. Commissioner, 389 F.3d 601 (6th Cir. 2004), that the taxpayer was not entitled to an abatement of interest.  Second, the notice states that petitioners never established that their facts did not support the imposition of interest under section 6621(c).  Third, the notice indicates that petitioners never discussed at the hearing their claim that they were not given an opportunity to be heard during the examination and, hence, that Driver considered that issue to be abandoned.

## OPINION

This case is yet another in a long list of cases brought in this Court involving respondent's proposal to levy on the assets of a partner in a Hoyt partnership to collect Federal income taxes attributable to the partner's participation in the partnership.  In each of the other prior cases, all of which were brought by Merriam as either counsel or co-counsel, this Court has sustained respondent's right to levy on the assets of the petitioning taxpayer (or, in the case of joint returns, the petitioning taxpayers).  See Hansen v. Commissioner, T.C. Memo.

2007-56; <u>Catlow v. Commissioner</u>, T.C. Memo. 2007-47; <u>Estate of Andrews v. Commissioner</u>, T.C. Memo. 2007-30; <u>Freeman v. Commissioner</u>, T.C. Memo. 2007-28; <u>Johnson v. Commissioner</u>, T.C. Memo. 2007-29; <u>Abelein v. Commissioner</u>, T.C. Memo. 2007-24; <u>Hubbart v. Commissioner</u>, T.C. Memo. 2007-26; <u>Carter v. Commissioner</u>, T.C. Memo. 2007-25; <u>Ertz v. Commissioner</u>, T.C. Memo. 2007-15; <u>McDonough v. Commissioner</u>, T.C. Memo. 2006-234; <u>Lindley v. Commissioner</u>, T.C. Memo. 2006-229; <u>Blondheim v. Commissioner</u>, T.C. Memo. 2006-216; <u>Clayton v. Commissioner</u>, T.C. Memo. 2006-188; <u>Keller v. Commissioner</u>, T.C. Memo. 2006-166; <u>Barnes v. Commissioner</u>, T.C. Memo. 2006-150. As was equally true as to the taxpayers in many of those prior cases, petitioners here made a lowball offer to Appeals to compromise their tax debt and now argue in this Court that Appeals's rejection of their offer was an abuse of discretion because, generally speaking, they claim that the Appeals officer did not appreciate the specifics of their case.

Where an underlying tax liability is not at issue in a case invoking our jurisdiction under section 6330(d), we review a determination of Appeals for abuse of discretion. See <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000). We reject the determination of Appeals only if the determination was arbitrary, capricious, or without sound basis in fact or law. See <u>Cox v. Commissioner</u>, 126 T.C. 237, 255 (2006); <u>Murphy v. Commissioner</u>,

125 T.C. 301, 308, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006). Where we decide the propriety of Appeals's rejection of an offer-in-compromise, as we do here, we review the reasoning underlying that rejection to decide whether the rejection was arbitrary, capricious, or without sound basis in fact or law. We do not substitute our judgment for that of Appeals, and we do not decide independently the amount that we believe would be an acceptable offer-in-compromise. See Murphy v. Commissioner, supra at 320; Fowler v. Commissioner, T.C. Memo. 2004-163; Fargo v. Commissioner, T.C. Memo. 2004-13, affd. 447 F.3d 706 (9th Cir. 2006). Nor do we usually consider arguments, issues, or other matters raised for the first time at trial, but we limit ourselves to matter brought to the attention of Appeals. See Murphy v. Commissioner, supra at 308; Magana v. Commissioner, 118 T.C. 488, 493 (2002). "[E]vidence that * * * [a taxpayer] might have presented at the section 6330 hearing (but chose not to) is not admissible in a trial conducted pursuant to section 6330(d)(1) because it is not relevant to the question of whether the Appeals officer abused her discretion." Murphy v. Commissioner, supra at 315.[6]

---

[6] In Murphy v. Commissioner, 125 T.C. 301 (2005), affd. 469 F.3d 27 (1st Cir. 2006), the Court declined to include in the record external evidence relating to facts not presented to Appeals. The Court distinguished Robinette v. Commissioner, 123 T.C. 85 (2004), revd. 439 F.3d 455 (8th Cir. 2006), and held that the external evidence was inadmissible in that it was not
(continued...)

Section 6330(c)(2)(A)(iii) allows a taxpayer to offer to compromise a Federal tax debt as a collection alternative to a proposed levy. Section 7122(c) authorizes the Commissioner to prescribe guidelines to determine when a taxpayer's offer-in-compromise should be accepted. The applicable regulations, section 301.7122-1(b), Proced. & Admin. Regs., list three grounds on which the Commissioner may accept an offer-in-compromise of a Federal tax debt. These grounds are "Doubt as to liability", "Doubt as to collectibility", and to "Promote effective tax administration". Sec. 301.7122-1(b)(1), (2), and (3), Proced. & Admin. Regs.

Petitioners argue in brief that Appeals (acting through Driver) abused its discretion by not accepting their offer to compromise their tax liability on the ground of effective tax administration in that, they assert, Driver did not adequately

---

[6](...continued)
relevant to the issue of whether Appeals abused its discretion. In a memorandum that petitioners filed with the Court on April 13, 2006, pursuant to an order of the Court directing petitioners to explain the relevancy of any external evidence that they desired to include in the record of this case, petitioners made no claim that they had offered any of the external evidence to Driver. Instead, as we read petitioners' memorandum in the light of the record as a whole, petitioners wanted to include the external evidence in the record of this case to prove that Driver abused her discretion by not considering facts and documents that they had consciously decided not to give to her. Consistent with Murphy v. Commissioner, supra, we sustained respondent's relevancy objections to the external evidence.

consider the specifics of their case.[7] The Commissioner may compromise a tax liability to promote effective tax administration when collection of the full liability will create economic hardship and the compromise would not undermine compliance with the tax laws by taxpayers in general. See sec. 301.7122-1(b)(3)(i), (iii), Proced. & Admin. Regs. If a taxpayer does not qualify for effective tax administration compromise on grounds of economic hardship, the regulations also allow the Commissioner to compromise a tax liability to promote effective tax administration when the taxpayer identifies compelling considerations of public policy or equity. See sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.

Driver considered all of the evidence submitted to her by petitioners, and she applied the guidelines for evaluating an offer-in-compromise to promote effective tax administration. She determined that petitioners' offer was unacceptable because, among other reasons, they were not forthcoming in establishing

---

[7] Petitioners' posttrial opening brief also states as an issue the question of whether Appeals abused its discretion by rejecting petitioners' request for an offer-in-compromise on the ground of doubt as to collectibility. The brief does not, however, advance any direct argument on this issue, stating instead that the resolution of the issue is controlled by our decision on petitioners' claim of effective tax administration. We consider petitioners to have waived any independent claim of error related to Appeals's rejection of their offer-in-compromise on the ground of doubt as to collectibility and limit our discussion to Appeals's rejection of petitioners' offer-in-compromise on the ground of effective tax administration.

their financial status and acceptance of the offer would undermine compliance with the tax laws by taxpayers in general. She determined that petitioners' offer to pay $11,552 was unacceptable because they had the financial wherewithal to pay more than that amount. Driver's ultimate determination to reject petitioners' $11,552 offer-in-compromise was not arbitrary, capricious, or without a sound basis in fact or law, and it was not abusive or unfair to petitioners. Her determination was based on a reasonable application of the guidelines, which we decline to second-guess. See Speltz v. Commissioner, 124 T.C. 165 (2005), affd. 454 F.3d 782 (8th Cir. 2006).

In their posttrial opening brief, petitioners essentially make four arguments in advocating a contrary result. First, petitioners argue that Driver did not adequately consider their unique facts and circumstances. We disagree. Driver reviewed and considered all information given to her by petitioners. On the basis of the facts and circumstances of petitioners' case as gleaned from that information, as well as learned from other information obtained during her independent analysis, Driver determined that petitioners' offer did not meet the applicable guidelines for acceptance of an offer-in-compromise to promote effective tax administration because acceptance of that offer would undermine compliance with the tax laws by taxpayers in general. We find no abuse of discretion in that determination.

Nor do we find that Driver inadequately considered the information given to her by petitioners.  Driver accepted all of the values for assets, liabilities, income, and expenses given to her by petitioners on their Form 433-A, and she only increased the value of petitioners' total assets to take into account the unreported assets which she uncovered during her independent analysis.  Indeed, even in the case of the unreported assets, Driver's valuation of those assets did not significantly depart from petitioners' valuation of those assets.[8]  We find that Driver gave thorough consideration to all of petitioners' claims in the light of all of the facts that were communicated to her by petitioners or were otherwise learned by her from other sources.

As petitioners view this issue, the opinion of the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, 447 F.3d 706 (9th Cir. 2006), requires that Appeals accept their $11,552 offer because, they claim, their investment in the Hoyt partnerships was not purely tax motivated, they were victims of Hoyt's fraud, and respondent and Hoyt caused a significant delay in the resolution of respondent's examinations of the Hoyt partnerships.  We do not read Fargo v. Commissioner, supra, as

---

[8] Petitioners' sole dispute with Driver's valuation of their assets relates to the unreported lots, which petitioners contend had no value.  We cannot fathom that the lots had no value whatsoever, and we do not believe that it was an abuse of Driver's discretion to value each lot at a minimal average value of $500.

broadly as petitioners. <u>Fargo</u> does not support their claim that Appeals was automatically required to accept petitioners' bargain-basement offer of $11,552. It cannot be gainsaid that a significant motivation of their investment in the Hoyt tax shelters was to realize tax savings.

Petitioners also argue that their offer was required to be accepted because they adequately demonstrated that they will suffer economic hardship if required to pay their assessed tax liability in full. To this end, petitioners state, Driver ignored both their medical issues and their age and retirement status in making her determination, and it is "reasonably foreseeable" that they will need all of their home equity and retirement assets to compensate for this shortfall and to use for their care and support in the future. By petitioners' count, their monthly income is exceeded by their monthly expenses, creating a deficit of $819 (i.e., monthly income of $3,223 less monthly living expenses of $4,042), and Driver's analysis requires that they liquidate all of their retirement accounts and home equity in order to pay their tax liability.

We disagree with petitioners that they have demonstrated that requiring them to pay more than $11,552 towards their assessed tax liability will result in an economic hardship.[9] The

---

[9] Even if they had shown economic hardship, a compromise on the basis of effective tax administration will not be made if it
(continued...)

record establishes that Driver, when she made her determination, did know the specifics of petitioners' age and financial status (including the amount and sources of petitioners' income) and that she accepted the amount of the monthly medical expenses reported to her by petitioners on their Form 433-A. Driver was not required on her own initiative to increase arbitrarily the amount of those reported medical expenses to reflect the possibility that petitioners would incur additional medical costs in the future. See Fargo v. Commissioner, supra at 710. Driver's analysis focused on petitioners' $79,461 assessed liability, and petitioners' net realizable equity in assets was $161,844, an amount that exceeds petitioners' assessed liability by $82,383. We do not consider Appeals to have abused its discretion by rejecting petitioners' claim that they will suffer an economic hardship if required to pay more than their $11,552 offer.[10]

---

[9](...continued)
would undermine compliance with the tax laws by taxpayers in general, see sec. 301.7122-1(b)(3)(iii), Proced. & Admin. Regs., and Driver determined that petitioners failed to meet that essential requirement.

[10] Petitioners argue that Driver's analysis is flawed in that she considered only their assessed tax liability and not their assessed and unassessed tax liability. In that Driver concluded that petitioners' offer of $11,552 in compromise of their $79,461 assessed tax liability was unacceptable, petitioners have not explained to our satisfaction how increasing the stated assessed liability almost threefold to reflect the amount of the unassessed liability would then make their offer

(continued...)

Second, petitioners argue that public policy demands that their offer-in-compromise be accepted because they were victims of fraud. We disagree. While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two illustrative examples. See sec. 301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs. The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years. The second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions. Neither example bears any resemblance to this case. See Speltz v. Commissioner, 454 F.3d at 786. Unlike the exceptional circumstances exemplified in the regulations, petitioners' situation is neither unique nor exceptional in that petitioners' situation mirrors that of numerous taxpayers who claimed tax shelter deductions in the 1980s and 1990s, obtained the tax advantages, promptly forgot about their "investment", and now realize that paying their taxes may require a change of lifestyle.[11]

---

[10](...continued)
acceptable.

[11] Of course, the examples in the regulations are not meant to be exhaustive, and petitioners' situation is not identical to that of the taxpayers in Fargo v. Commissioner, 447 F.3d 706, 714 (9th Cir. 2006), affg. T.C. Memo. 2004-13, regarding whom the Court of Appeals for the Ninth Circuit noted that "no evidence

(continued...)

We also agree with Driver that compromising petitioners'
case on grounds of public policy or equity would not promote
effective tax administration.  While petitioners portray
themselves as victims of Hoyt's alleged fraud and respondent's
alleged delay in dealing with Hoyt, they take no responsibility
for their tax predicament.  We cannot agree that acceptance by
respondent of petitioners' $11,552 offer to satisfy their
estimated $265,023 tax liability would enhance voluntary
compliance by other taxpayers.  A compromise on that basis would
place the Government in the unenviable role of an insurer against
poor business decisions by taxpayers, reducing the incentive for
taxpayers to investigate thoroughly the consequences of
transactions into which they enter.  It would be particularly
inappropriate for the Government to play that role here, where
the transaction at issue involves a tax shelter.  Reducing the
risks of participating in tax shelters would encourage more

---

[11](...continued)
was presented to suggest that Taxpayers were the subject of fraud
or deception".  Such considerations, however, have not kept this
Court from finding investors in Hoyt's shelters to be culpable of
negligence, see, e.g., Keller v. Commissioner, T.C. Memo.
2006-131, nor prevented the Courts of Appeals for the Sixth,
Ninth, and Tenth Circuits from affirming our decisions to that
effect in Hansen v. Commissioner, 471 F.3d 1021 (9th Cir. 2006),
affg. T.C. Memo. 2004-269; Mortensen v. Commissioner, 440 F.3d
375 (6th Cir. 2006), affg. T.C. Memo. 2004-279; and Van Scoten v.
Commissioner, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo.
2004-275.

taxpayers to run those risks, thus undermining rather than enhancing compliance with the tax laws.[12]

Third, petitioners argue that Driver failed to balance efficient collection with the legitimate concern that collection through the proposed levy be no more intrusive than necessary. We disagree. Driver thoroughly considered this balancing issue on the basis of the information and proposed collection alternative (offer-in-compromise) given to her by petitioners. She concluded that the proposed levy action was an appropriate means for collecting the liabilities at issue. She thoroughly considered petitioners' arguments for accepting their offer-in-compromise, and she rejected the offer only after concluding that petitioners could pay more of their tax liability than the $11,552 they offered. Cf. Internal Revenue Manual sec. 5.8.11.2.1(11) ("When hardship criteria are identified but the taxpayer does not offer an acceptable amount, the offer should not be recommended for acceptance").

---

[12] Nor does the fact that petitioners' case may be "longstanding" overcome the detrimental impact on voluntary compliance that could result from respondent's accepting petitioners' offer-in-compromise. An example in Internal Revenue Manual sec. 5.8.11.2.2 implicitly addresses the "longstanding" issue. There, the taxpayer invested in a tax shelter in 1983, thereby incurring tax liabilities for 1981 through 1983. He failed to accept a settlement offer by respondent that would have eliminated a substantial portion of his interest and penalties. Although the example, which is similar to petitioners' case in several respects, would qualify as a "longstanding" case by petitioners' standards, the offer was not acceptable because acceptance of it would undermine compliance with the tax laws.

Fourth, petitioners argue that Driver inappropriately failed to consider whether they qualified for an abatement of interest for reasons other than those described in section 6404(e). We disagree. We find nothing to suggest that Driver believed that petitioners' sole remedy for interest abatement in this case rested on the rules of section 6404(e). In fact, regardless of the rules of section 6404(e), Driver obviously would have abated interest in this case had she agreed to let petitioners compromise their liability by paying less than the amount of interest included within that liability. All the same, we find no basis in the evidence for an abatement of interest, nor any abuse of discretion by Driver in denying their request for abatement. Cf. Mekulsia v. Commissioner, 389 F.3d 601 (6th Cir. 2004).

We hold that Appeals (acting through Driver) did not abuse its discretion in rejecting petitioners' $11,552 offer-in-compromise. In so holding, we express no opinion as to the amount of any compromise that petitioners could or should be required to pay, or that respondent is required to accept. The only issue before us is whether Appeals abused its discretion in refusing to accept petitioners' specific offer-in-compromise in the amount of $11,552. See Speltz v. Commissioner, 124 T.C. at 179-180. We have considered all arguments made by petitioners

for a contrary holding, and we have found those arguments not discussed herein to be without merit.

<u>An appropriate order and decision will be entered</u>.