# United States Tax Court

T.C. Memo. 2025-99

MIDDLE DEPARTMENT INSPECTION AGENCY, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 20018-23L.                                   Filed October 1, 2025.

———————

*Barry Allen Furman* and *Lowell F. Raeder*, for petitioner.

*Sarah A. Herson*, *David A. Indek*, *Amanda K. Krugler*, and *Shawn P. Nowlan*, for respondent.


## MEMORANDUM OPINION

JONES, *Judge*: In this collection due process (CDP) case, petitioner, Middle Department Inspection Agency, Inc. (MDIA), asks the Court to review a Notice of Determination Concerning Collection Actions Under IRS Sections 6320[1] or 6330 of the Internal Revenue Code (notice of determination), issued by the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals) on November 8, 2023. The notice of determination rejected MDIA's proposed offer-in-compromise (OIC or offer) and sustained the proposed levy action to collect unpaid

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulatory references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar. Parenthetical references to "Doc." are to documents as they are numbered in the docket record of this case, and the page numbers cited in those references are to the numbering in the portable document format "PDF" of the digital file.

[*2] excise taxes related to MDIA's failure to meet minimum funding standards for its defined benefit employee pension plan for taxable years 2000 through 2018 (taxable years at issue).

This matter is before the Court on MDIA's and respondent's cross-Motions for Summary Judgment pursuant to Rule 121 (Docs. 28 and 29). In his Motion for Summary Judgment respondent contends that there are no disputes of material fact and that the determination to reject MDIA's proposed OIC and sustain the proposed levy action does not constitute an abuse of discretion. In its Motion for Summary Judgment, as supported by the Declaration of Glenn Beaver in Support of Motion for Summary Judgment and related Exhibits, MDIA contends that the undisputed material facts show that Appeals abused its discretion in rejecting MDIA's offer.

Accordingly, the issue for decision is whether Appeals abused its discretion by denying MDIA's proposed OIC and sustaining the proposed levy action for the taxable years at issue. For the reasons elaborated upon below, we agree with respondent that Appeals did not abuse its discretion. We will therefore grant respondent's Motion and deny MDIA's Motion.

*Background*

The following background information is drawn from the parties' pleadings, Motion papers and Exhibits, and the Administrative Record of the CDP hearing conducted pursuant to section 6330. *See* Rules 93, 121(c). This background is stated solely for the purpose of resolving the present Motions and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). MDIA's principal place of business or principal office was in Pennsylvania when it filed the Petition.

I.    *MDIA's Business*

MDIA is in the highly competitive business of conducting inspections for construction projects to determine compliance with construction codes and building regulations. MDIA provides a full range of safety inspection services, including plan review, as well as building, plumbing, fire protection, and electrical inspections. MDIA's headquarters is in Pennsylvania, but it conducts operations in six mid-Atlantic states: New York, Pennsylvania, West Virginia, Delaware, Maryland, and Virginia. MDIA or its predecessors have been in business

[*3] since 1883. Glenn Beaver is the president and majority shareholder of MDIA and has worked for the company for more than 50 years.

MDIA established a single employer defined benefit pension plan (Plan) on July 1, 1972. In 1986 MDIA's profitability began to decline because of two underinsured claims reduced to judgment. In 1990 MDIA filed for bankruptcy and a plan of reorganization was subsequently approved. MDIA's Plan was underfunded and distressed at the time of the bankruptcy, but Mr. Beaver felt a moral obligation to maintain the Plan, as opposed to terminating it in bankruptcy.

Following the bankruptcy, MDIA faced legislative and regulatory challenges. Ultimately, MDIA was unable to contribute the required minimum funding amounts to the Plan. On September 30, 1998, MDIA froze the Plan and, as of that date, no new participants could be added and the accrued benefits for active employees became their maximum benefit. Following the freeze, MDIA failed to satisfy the required minimum funding standards for the Plan but nevertheless continued making contributions to the Plan that ranged from $200,000 to more than $1 million. MDIA maintains that "[n]o retiree missed any required benefit payment."

Ultimately, MDIA conducted a standard termination of its Plan. On or around October 1, 2021, MDIA made its final distribution to satisfy all Plan benefits; MDIA purchased annuities for 125 participants and made lump-sum payments to 24 participants, which totaled $4,327,005.[2] On or around December 30, 2021, MDIA filed Pension Benefit Guaranty Corporation (PBGC) Form 501, Post-Distribution Certification for Standard Termination. On September 1, 2022, MDIA filed Form 5500, Annual Return/Report of Employee Benefit Plan, for taxable year 2021, which constituted its final return for the Plan, and it paid the tax shown as due on that return.

II.   *Deficiency, Notice, and Request for a CDP Hearing*

This matter arises from MDIA's unpaid excise taxes (and associated interest) related to its failure to meet the minimum funding

---

[2] In its August 25, 2022, Letter, *see infra* pp. 7–8, MDIA states that the benefits paid out under the Plan totaled $4,327,505. However, the attachments referenced in the Letter indicate that the total benefits paid out as part of the Plan's termination totaled $4,327,005, which is a difference of $500. This discrepancy is inconsequential; for purposes of this Opinion, we will refer to the latter number (i.e., $4,327,005), which we believe to be more accurate.

[*4] standards for its Plan for the taxable years at issue. For taxable years 2000 through 2011 the IRS issued MDIA a Notice of Deficiency. *See* Petition, *Middle Department Inspection Agency, Inc. v. Commissioner*, No. 22782-14 (T.C. filed Sept. 24, 2014). In response MDIA filed a Petition with this Court, and on June 21, 2017, the Court entered a stipulated decision for taxable years 2000 through 2011, according to which MDIA was liable for deficiencies totaling $2,731,335 pursuant to section 4971(a). *See* Stipulated Decision, *Middle Department Inspection Agency, Inc. v. Commissioner*, No. 22782-14 (T.C. filed June 21, 2017). For taxable years 2012 through 2018, the liabilities are the result of MDIA's self-assessment of section 4971(a) excise taxes totaling $2,854,698, as shown on its Forms 5330, Return of Excise Taxes Related to Employee Benefit Plans.

On February 16, 2021, the IRS issued MDIA two separate Letters 1058, Final Notice, Notice of Intent to Levy and Notice of Your Rights to a Hearing (Levy Notice). The first Levy Notice concerned outstanding liabilities for taxable years 2000 through 2009, totaling $4,112,641. The second Levy Notice concerned outstanding liabilities for taxable years 2010 through 2018, totaling $5,607,668.

MDIA requested a CDP hearing by filing Form 12153, Request for a Collection Due Process or Equivalent Hearing, which the IRS received via fax on March 16, 2021. On the Form 12153, MDIA checked the boxes for the "Offer in Compromise" collection alternative and for lien withdrawal. MDIA's Form 12153 also included various attachments, such as written reasons for the requests. Therein, MDIA asserted that the Levy Notices were procedurally defective. MDIA also stated that for taxable years 2000 through 2011 the Tax Court had entered a stipulated decision between MDIA and the IRS for less than the amount of the Levy Notice for those years. Further, MDIA averred that it had previously submitted an OIC that was rejected and that it was in the process of completing a standard termination of the Plan. MDIA represented that upon the Plan's termination it intended to submit an OIC and requested that the Levy Notice be withdrawn.

III.    *The CDP Hearing*

MDIA's CDP hearing was initially assigned to Appeals Officer Lisa R. Wold (AO Wold). On May 6, 2021, AO Wold verified that she had no prior involvement with MDIA in either Appeals or any other IRS function for the type of tax and taxable years at issue in the CDP case. On May 12, 2021, AO Wold reviewed the case file and verified that the

**[\*5]** requirements of applicable law and administrative procedure were met. On May 24, 2021, AO Wold issued Letter 4837, Substantive Contact Letter, and scheduled a telephone CDP hearing for June 22, 2021. The letter also requested that MDIA submit (1) an OIC package, including Form 433–B, Collection Information Statement for Businesses, and (2) various delinquent tax returns.

On June 8, 2021, MDIA's representative, Barry Furman, left a voicemail for AO Wold. That same day AO Wold returned Mr. Furman's call, and they discussed MDIA's missing returns; Mr. Furman said that MDIA might not have been required to file some of the returns but that he would investigate further. Additionally, Mr. Furman stated that MDIA intended to terminate its Plan in September 2021 but did not want to file another OIC before then at the risk that the IRS would reject its offer again. In response AO Wold informed Mr. Furman that she could not hold the CDP hearing open until September, and Mr. Furman stated that he would consider how to best move forward.

On June 18, 2021, Mr. Furman contacted AO Wold and asked to reschedule the hearing because of a conflict. Accordingly, AO Wold rescheduled the CDP hearing for July 20, 2021, and stated that if MDIA wanted to pursue an OIC it needed to submit an offer on or before that date. On July 20, 2021, Mr. Furman called AO Wold for the scheduled CDP hearing. During the call Mr. Furman stated that MDIA was due to terminate the Plan in October. He also stated that MDIA had not received notices about the balance owed. Finally, Mr. Furman stated that the assessed liability should only be approximately $2 million.

Between January and April 2022, MDIA's CDP case was reassigned three times to different Appeals Officers. Ultimately, MDIA's case was reassigned to Appeals Officer Jason A. Alves (AO Alves). On April 7, 2022, AO Alves verified that he had no prior involvement with MDIA in either Appeals or any other IRS function for the type of tax and taxable years at issue in the CDP case.

On the following day, April 8, 2022, AO Alves reviewed the case file and verified that the requirements of applicable law and administrative procedure had been met. Later that day, AO Alves and Mr. Furman had a telephone call to discuss the status of the CDP case. During the call Mr. Furman stated that MDIA had terminated its Plan several months before and that it planned to submit an OIC based on effective tax administration. AO Alves then asked about MDIA's delinquent returns for taxable years 2019 and 2020, to which Mr.

[*6] Furman responded that all returns should have been filed but that he would investigate the issue further. Finally, in response to Mr. Furman's statement that MDIA had not received notice and demand, AO Alves explained that the Levy Notices that MDIA received were sufficient to meet the requirements of section 6303(a). In response Mr. Furman stated that he understood and that the only legal issue MDIA was pursuing was an OIC.

On April 14, 2022, Mr. Furman left a voicemail for AO Alves and stated that MDIA had confirmed its filing compliance for taxable years 2019 and 2020. He also stated that the Plan was fully funded for those years and no returns were required to be filed.

On April 19, 2022, AO Alves and Mr. Furman had another telephone call, during which Mr. Furman raised two arguments. First, Mr. Furman argued that the Tax Court's decision for taxable years 2000 through 2011 was not implemented correctly, and he specifically focused on two periods therein. After review, AO Alves explained that MDIA's accounts for taxable years 2000 through 2011 properly reflected the Tax Court's decision and that Mr. Furman failed to account for the interest due on the balance. Second, Mr. Furman once again raised the argument that MDIA had not received notice and demand, which AO Alves rejected for the same reasons discussed on the April 8, 2022, call. At the end of the call AO Alves and Mr. Furman confirmed that MDIA would submit an OIC and supporting information on or before May 1, 2022.

On May 6, 2022, AO Alves received two checks from MDIA, one check for $205 (for the application fee) and the other for $50,000 (for an initial payment on the offer). The checks were accompanied by a cover letter stating that they were to be applied to MDIA's offer, although the checks were not accompanied by Form 656, Offer in Compromise, or Form 433–B. Between May and June 2022, AO Alves called Mr. Furman multiple times and sent a letter trying to procure the necessary forms for MDIA's offer. During a phone call between AO Alves and Mr. Furman on June 28, 2022, Mr. Furman stated that MDIA was communicating with the IRS's national office regarding abatement of the excise taxes in question, which might moot the need for an offer. Mr. Furman said he would get back to AO Alves by the end of that week.

Following a series of delays, on August 18, 2022, AO Alves called Mr. Furman for a status update. Mr. Furman explained that because the IRS's national office was considering abatement, he was advised not to submit an OIC at that time. Instead, Mr. Furman asked AO Alves to

**[\*7]** reach out to the PBGC. AO Alves stated that he would not hold the case open on the vague and unsubstantiated claim that the national office was considering abatement and further explained that the proposed conversation would violate Appeals' disclosure rules. AO Alves also noted his familiarity with the ex parte communication rules, though he acknowledged that not all ex parte communications are prohibited. In response, Mr. Furman said that AO Alves was being unreasonable, and AO Alves responded that MDIA had been given a reasonable opportunity to present its case as the CDP case had been pending for over a year.

However, AO Alves ultimately allowed Mr. Furman to schedule a conference call the following week with AO Alves, someone from the PBGC, and a contact from the IRS's national office. On the call, Mr. Furman sought to substantiate MDIA's efforts to resolve the outstanding liability outside of Appeals. AO Alves concluded the call, stating that on the basis of the information provided to Appeals to date, the proposed levy action would be sustained.

## A. *Doubt as to Collectibility Offer in Compromise*

On August 25, 2022, AO Alves received a fax from MDIA comprising Form 656, Form 433–B, and other attachments. AO Alves requested a new work unit number for the OIC and forwarded the Form 656 to the IRS Collections centralized OIC unit (centralized unit) for evaluation. The CDP hearing was suspended.

On the August 25, 2022, Form 656, MDIA sought to compromise the outstanding liabilities under section 4971(a) for the taxable years at issue on the grounds of doubt as to collectibility *without* special circumstances, for a total of $250,000 paid over five months (Initial Offer).[3] MDIA also submitted Form 433–B, which showed net equity in assets of $2,156,781, and reflected average gross monthly income of $702,887, average monthly business expenses of $645,967, and a total of remaining average monthly income of $56,920. Although the business assets reflected on MDIA's Form 433–B totaled $2,156,781 and MDIA's reported average monthly income over the 12-month payment period equaled $683,040, MDIA offered $250,000 to compromise outstanding liabilities of more than $9 million.

---

[3] There is no indication in the Initial Offer that MDIA sought to pursue a doubt as to collectibility offer *with* special circumstances.

[*8]   Attachments to MDIA's Forms 656 and 433–B included a letter that detailed information about MDIA's business and the cause of the liabilities for the taxable years at issue. The letter also discussed an alternative "theoretical offer amount" of $1,326,111, comprising MDIA's average monthly income over the 12-month payment period, totaling $683,040, and equity in assets totaling $640,571.[4] However, the letter further stated that even the "theoretical offer amount" of $1,326,111 would be unjust because, as the Supreme Court recognized in *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 222–26 (1996), for purposes of determining the priority of claims in a bankruptcy case, amounts assessed pursuant to section 4971(a) are not a tax but rather a penalty to be treated as an unsecured claim.

MDIA's Initial Offer and accompanying documents were received by the centralized unit on September 13, 2022,[5] and determined as "processable" the following day. MDIA's Initial Offer was evaluated by Offer Specialist A. Clark (OS Clark). On March 2, 2023, MDIA mailed OS Clark a letter that recounted the history of the company and its difficulty with its Plan. MDIA included attachments to the March 2, 2023, letter, including a copy of a final Form 5500 for taxable year 2021, a copy of PBGC Form 501 with various attachments and related correspondence, and bank statements.

On April 3, 2023, OS Clark sent a letter to MDIA which stated that the IRS considered the Initial Offer and, on the basis of MDIA's current financial information, had made a preliminary decision to reject the Initial Offer. The letter stated that MDIA's "offer amount must be increased before [the IRS] can consider acceptance of an OIC at this time to resolve your case." The letter also stated that "we have considered the special circumstances you raised, but they did not warrant a decision to accept your offer."

Attached to the preliminary decision letter were various worksheets detailing MDIA's financial position. The financial analysis, dated March 24, 2023, showed that MDIA had net equity in assets

---

[4] The Court notes that the amounts comprising MDIA's "theoretical offer amount" do not total $1,326,111, but rather total $1,323,611, for a discrepancy of $2,500. This discrepancy is inconsequential to the resolution of this case.

[5] The stipulated Administrative Record states that Exhibit 59-J, a copy of MDIA's Form 433–B, was received by the centralized unit on September 19, 2022. However, on the basis of the date stamp on the face of Form 433–B, it appears that the form was received by the centralized unit on September 13, 2022. This discrepancy is minor and does not affect the resolution of this case.

[*9] totaling $2,547,815, net monthly income of $9,487,[6] and an amount that could be paid, also known as a reasonable collection potential (RCP), of $2,661,659. The Initial Offer was sent back to AO Alves, and the CDP case was brought out of suspense.

Later on that day, April 13, 2023, Mr. Furman sent a fax to AO Alves that confirmed receipt of the preliminary denial of the Initial Offer and requested 30 days to submit responsive comments. On May 5, 2023, AO Alves called Mr. Furman to discuss the status of the case. During the call Mr. Furman confirmed that MDIA was on track to provide a timely response to the preliminary denial and stated that MDIA was going to submit an updated Form 433–B for consideration. Additionally, Mr. Furman expressed his intent to provide a statement about MDIA's special circumstances.

### B. *Response to Preliminary Rejection and Request for Doubt as to Collectibility Offer in Compromise with Special Circumstances*

On May 17, 2023, AO Alves received a fax from Mr. Furman with MDIA's response (including several attachments) to the preliminary denial of the Initial Offer. In that letter MDIA stated that it "now seeks to compromise its liability for the extractions based on doubt as to collectibility with special circumstances" (Revised Offer). MDIA argued that despite not satisfying the minimum funding requirements under section 430, the highly competitive nature of its field, its continuing contributions to the Plan (MDIA asserted that no Plan payments were missed), and the subsequent standard termination of the Plan constituted special circumstances that justified the acceptance of MDIA's Revised Offer.

The letter also cited several Internal Revenue Manual (IRM)[7] provisions applicable to doubt as to collectibility OICs with special circumstances, cited several cases, and set forth legal arguments regarding the RCP calculation. Specifically, MDIA argued that the centralized unit erred when it determined that MDIA had net equity in assets totaling $2,547,815, and cited *W. Zintl Construction, Inc. v. Commissioner*, T.C. Memo. 2017-119, at *11–12, for the proposition that

---

[6] As discussed *infra* Part II.C.1.c, the IRS erred in MDIA's favor when calculating the amount of net monthly income.

[7] The IRM "does not have the force of law and does not confer rights on taxpayers." *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006), *aff'g* T.C. Memo. 2004-13.

[*10] the computation of net equity in assets was erroneous because it failed to subtract the amount of MDIA's tax liability from its going-concern value. MDIA also stated that it fully funded the Plan, distributed lump-sum payments to 24 participants, purchased annuities for another 125 participants, and that the PBGC accepted its standard termination of the Plan.

MDIA also submitted an updated Form 433–B, dated May 5, 2023, that reflected net equity in assets totaling $2,442,974. The updated form also reflected that MDIA had average gross monthly business income of $741,887 (comprising $741,795 of gross receipts and $92 of dividends), average gross monthly business expenses of $680,105, and remaining monthly income totaling $61,782. Extrapolating MDIA's reported average monthly income over the 12-month payment period, MDIA's income over the next 12 months totaled $741,384.

On June 16, 2023, AO Alves returned to the Initial Offer to determine a revised RCP. He reviewed the centralized unit's RCP calculation for the Initial Offer and MDIA's updated Form 433–B. After review, AO Alves revised MDIA's RCP to $2,561,465, which was a decrease from the RCP calculated by the centralized unit. AO Alves also wrote a detailed response to each of MDIA's arguments in the case activity record; with respect to the special circumstances cited in MDIA's May 17, 2023, letter, he wrote that he did "not believe compromise [was] warranted." In the case activity record, and later in the notice of determination, AO Alves stated that MDIA had cited cases inapposite to the present situation, that it had failed to provide verification that no Plan payments were missed over the 18 taxable years at issue, and that the "SO does not agree that consistently underfunding the pension plan qualifies as a special circumstance [because], ultimately, the pensioners were paid net payments [without] regard to the future payments they were entitled to/promised." That same day AO Alves left a voicemail for Mr. Furman requesting a return call to discuss the additional information provided in support of the OIC.

On June 23, 2023, AO Alves and Mr. Furman had a telephone call. During the call Mr. Furman argued that MDIA's outstanding tax liability should be subtracted from the calculated net equity in assets, as previously asserted in MDIA's May 17, 2023, letter. AO Alves explained that unlike the taxpayer in *W. Zintl Construction*, MDIA's RCP calculation did not include the going concern value, so it did not need to be reduced by MDIA's outstanding tax liability. As to the special circumstances cited in MDIA's May 17, 2023, letter, AO Alves stated

[*11] that doubt as to collectibility offers with special circumstances could be accepted only if doing so would not undermine compliance with the tax laws and if the public would not perceive that the taxpayer benefited by not complying with the tax laws. *See* IRM 5.8.11.3.3 (Sept. 23, 2008). AO Alves continued, stating that accepting the Revised Offer for less than MDIA's RCP would undermine congressional intent regarding excise taxes imposed for underfunding a plan and that it would disadvantage those companies that followed the law. Mr. Furman stated that he would consider the points raised in the discussion and follow up with AO Alves by June 27, 2023.

On June 25, 2023, MDIA sent, and the following day AO Alves received, a letter from MDIA requesting that its Revised Offer be formally considered on the ground of special circumstances, namely on public policy grounds. First, MDIA claimed that despite not satisfying the minimum funding requirement, it regularly contributed funds to the Plan sufficient to make all payments when they came due. Second, MDIA argued that it completed the Plan in a standard termination on or about December 30, 2021, which was accepted by the PBGC, and distributed lump-sum payments or purchase annuities for the Plan participants. Third, MDIA averred that it paid the tax due on the standard termination on or about December 30, 2021. MDIA asserted that the Revised Offer should be accepted because it "obtained the best possible resolution."

MDIA also stated that the Revised Offer should be accepted on the basis of special circumstances, namely public policy grounds, because the code enforcement industry is highly competitive and that MDIA is a premier provider of such services. The letter continued, stating that the 183 similar firms in Pennsylvania could not compensate for the services that MDIA provides and that rejection of its Revised Offer would have a significant negative impact on the communities MDIA serves. Finally, MDIA argued that collection of the liability for the taxable years at issue would undermine public confidence that the tax laws are administered in a fair and equitable manner. Accordingly, AO Alves referred the Revised Offer, which was based on public policy grounds, to the specialty group that evaluates that type of offer. On July 5, 2023, AO Alves issued MDIA a Letter 5208, Notice of Appeals Referral Investigation, informing MDIA of the transfer.

On July 11, 2023, Effective Tax Administration Non-Economic Hardship Offer Specialist Phillip Knight (OS Knight) sent a memorandum to AO Alves informing him that MDIA's Revised Offer did

**[*12]** not meet non-economic hardship criteria and that he was rejecting transfer of the case. The memorandum stated that the assessed liabilities resulted from MDIA's failure to satisfy the minimum funding requirements under section 430. While the memorandum acknowledged that MDIA contributed funds to the Plan to satisfy payments due, it stated that assessment was proper because section 430 does not provide an exception for partially funded plans. The memorandum continued, stating that "[c]ompromise on public policy or equity grounds is not authorized based solely on a taxpayer's belief that a provision of the tax law is itself unfair" and that "[w]here a taxpayer is clearly liable for taxes, penalties, or interest due to operation of law, a finding that the law is unfair would undermine the will of Congress in imposing liability under those circumstances." Finally, the memorandum concluded that MDIA had not shown that rejection of the Revised Offer would have a negative impact on the community because, as MDIA stated on several occasions, the code enforcement industry is highly competitive.

On August 1, 2023, AO Alves sent a letter to Mr. Furman and attached a copy of the July 11, 2023, memorandum from OS Knight. AO Alves requested that MDIA submit comments on or before August 16, 2023. On August 10, 2023, Mr. Furman sent AO Alves a letter stating that he disagreed with the decision to reject MDIA's Revised Offer although the letter did not set forth any new arguments or provide new information. Rather, it incorporated the arguments set forth in MDIA's June 25, 2023, letter. The letter concluded that MDIA intended to petition the Tax Court regarding the rejection of its Revised Offer. On August 17, 2023, AO Alves received another letter from MDIA reiterating its disagreement with the rejection of the Revised Offer and stating that it should be accepted for the reasons set forth in prior communications.

On September 5, 2023, AO Alves called Mr. Furman and asked whether MDIA would increase the amount of its offer to match its RCP or pursue other collection alternatives. Mr. Furman indicated that MDIA would not increase the amount of the offer or pursue other collection alternatives. He asked that Appeals issue a notice of determination so that MDIA could petition the Tax Court. Accordingly, AO Alves prepared the necessary closing documents. In the notice of determination AO Alves stated that "the SO did not agree that consistently underfunding the pension plan qualifies as a special circumstance because, ultimately, the pensioners were paid net payments without regard to the future payments they were entitled to/promised." However, AO Alves then wholly incorporated the

**[\*13]** reasoning set forth in the memorandum prepared by OS Knight into the notice of determination. On November 8, 2023, Appeals Team Manager David R. Fuller issued the notice of determination sustaining the proposed levy action.

*Discussion*

I.      *General Principles*

A.      *Summary Judgment Standard*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We may grant summary judgment when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rest upon mere allegations or denials in its pleadings and must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). On the basis of the record before the Court, we conclude that this case is appropriate for summary adjudication.

B.      *Standard of Review*

This Court has jurisdiction to review the administrative determination made by Appeals. *See* § 6330(d)(1). Where the underlying liability was not properly at issue, we will review Appeals' determination for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). An abuse of discretion occurs if the Appeals Officer exercises discretion "arbitrarily, capriciously, or without sound basis in fact or law." *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999); *see also Giamelli v. Commissioner*, 129 T.C. 107, 111 (2007); *Murphy v. Commissioner*, 125 T.C. 301, 308, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). Where the underlying tax liability was properly at issue in the CDP hearing, we will review the determination de novo. *Lunsford v. Commissioner*, 117 T.C. 183, 185 (2001) (citing *Goza*, 114 T.C. at 181–82).

Section 6330(c)(2)(B) provides that a taxpayer may challenge its underlying tax liability during a CDP hearing if the taxpayer did not

[*14] receive a statutory Notice of Deficiency or did not otherwise have a prior opportunity to dispute the underlying tax liability. However, the Court can consider a taxpayer's challenge to an issue, including underlying liability, only if the taxpayer properly raised that challenge at the administrative hearing. *Giamelli*, 129 T.C. at 115–16; *see also* Treas. Reg. § 301.6330-1(f)(2), Q&A-F3.

Both MDIA and respondent submit that the appropriate standard of review is abuse of discretion, and we agree. For taxable years 2000 through 2011, MDIA received a Notice of Deficiency from the IRS and filed a Petition with this Court contesting that determination. Therefore, MDIA has already challenged the liabilities for those taxable years. *See* § 6330(c)(2)(B); *see also, e.g.*, *Goodman v. Commissioner*, T.C. Memo. 2006-220. For taxable years 2012 through 2018, MDIA did not raise any arguments pertaining to the underlying liabilities. Therefore, it cannot raise such arguments here. *See Pough v. Commissioner*, 135 T.C. 344 (2010); Treas. Reg. § 301.6330-1(f)(2), Q&A-F3.

Accordingly, we will review Appeals' determination for abuse of discretion. In doing so, "[w]e judge the propriety of [Appeals'] determination . . . on the grounds invoked by . . . Appeals." *See Serna v. Commissioner*, T.C. Memo. 2022-66, at *8 (quoting *Elkins v. Commissioner*, T.C. Memo. 2020-110, at *24); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Antioco v. Commissioner*, T.C. Memo. 2013-35, at *25 ("Applying *Chenery* in the CDP context means that we [cannot] uphold a notice of determination on grounds other than those actually relied upon by the Appeals [O]fficer."). "[W]e look to the reasons offered in the notice of determination, as further unspooled in the settlement officer's contemporaneous rejection memorandum and case activity notes." *Serna*, T.C. Memo. 2022-66, at *8; *accord Melasky v. Commissioner*, 151 T.C. 93, 106 (2018) ("[W]e will uphold a notice of determination of less than ideal clarity if the basis for the determination may reasonably be discerned . . . ."), *aff'd*, 803 F. App'x 732 (5th Cir. 2020); *Kasper v. Commissioner*, 150 T.C. 8, 24–25 (2018). "Although we may not accept any *post hoc* rationalizations for agency action provided by the Commissioner's counsel, we may consider any 'contemporaneous explanation of the agency decision' contained in the record." *Kasper*, 150 T.C. at 24–25 (quoting *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 738 (D.C. Cir. 2001)).

**[\*15]** C.     *The Administrative Record*

Pursuant to Rule 93(a), on January 6, 2025, the parties filed the Administrative Record in this case, comprising the parties' Stipulation as to the Administrative Record (Doc. 23) and three separate documents including Exhibits with the materials contained in the Administrative Record (Docs. 24, 25, and 26).[8] Additionally, the parties stipulated Exhibit 105-J, a letter from Mr. Furman to AO Alves, dated June 25, 2023, which is outside of the Administrative Record. Neither party has filed a Motion to Supplement the Administrative Record. *See* Rule 93(b).

However, concurrent with the filing of its Motion for Summary Judgment, MDIA also filed the Declaration of Glenn Beaver in Support of Motion for Summary Judgment (Doc. 31) and Exhibit(s) to Declaration of Glenn Beaver in Support of Motion for Summary Judgment (Doc. 32). In its Memorandum in Support of Motion for Summary Judgment, MDIA argues that the Court can consider the Declaration.

This Court has previously held that it is not required to apply a limited scope of review and may accept evidence outside the administrative record in a CDP case. *See Robinette v. Commissioner*, 123 T.C. 85, 101 (2004) ("[W]hen reviewing for abuse of discretion under section 6330(d), . . . our review is not limited to the administrative record."), *rev'd*, 439 F.3d 455 (8th Cir. 2006). Although some U.S. Courts of Appeals have concluded that our review is limited to the administrative record in CDP cases, the U.S. Court of Appeals for the Third Circuit, to which this case is presumptively appealable, *see* § 7482(b)(1)(G)(ii), has not specifically addressed this issue in a precedential opinion, *see Snipes v. Commissioner*, T.C. Memo. 2018-184, at \*8–9; *see also Rozday v. Commissioner*, 703 F. App'x 138, 139 (3d Cir. 2017) ("This Court has not addressed the precise question of whether the Tax Court may conduct a trial de novo—at which new evidence, not in the administrative record, may be admitted—when ruling on a petition for review under 26 U.S.C. § 6330(d)(1)."); *cf. Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009), *aff'g in part* T.C.

---

[8] Pursuant to Rule 93(a), the parties can stipulate either "the entire administrative record . . . *or so much of that record as either party may deem necessary* for a complete disposition of the issue or issues in dispute." (Emphasis added.) The Administrative Record in this case is almost 1,700 pages long and contains duplicates of several documents. The Court reminds the parties that Rule 93 affords them the flexibility to avoid the inclusion of duplicates in the stipulated Administrative Record, which in turn promotes judicial efficiency.

**[\*16]** Memo. 2006-166, *and aff'g in part, vacating in part* decisions in related cases; *Murphy v. Commissioner*, 469 F.3d at 30–31; *Robinette v. Commissioner*, 439 F.3d at 461–62. Accordingly, we are not bound by the decisions of the U.S. Courts of Appeal for the First, Eighth, or Ninth Circuits in this case. *See Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). Our review will not be limited to the Administrative Record. *See Robinette*, 123 T.C. 82.

Accordingly, we will consider Exhibit 105-J, which the parties have stipulated, as well as the Declaration of Glenn Beaver, which was filed in support of MDIA's Motion for Summary Judgment. With respect to the Exhibit(s) to the Declaration of Glenn Beaver in Support of Motion for Summary Judgment, all of the attached Exhibits are duplicates of items already in the Administrative Record. So, while we can consider them, we need not.[9]

II.    *Analysis*

   A.    *Statutory Framework*

We review AO Alves's determinations for abuse of discretion, and we consider whether he (1) properly verified that the requirements of any applicable law or administrative procedure were met; (2) considered any relevant issues raised by MDIA; and (3) considered whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of MDIA that any collection action be no more intrusive than necessary. *See* § 6330(c)(3); *Sego*, 114 T.C. at 609.

   B.    *Verification Requirement*

First, this Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011). MDIA did not allege in the Petition that AO Alves failed to satisfy this requirement and has set forth no specific facts as to this matter. *See* Rules 121(d),

---

[9] The Court notes that documents included in the Exhibit(s) to Declaration of Glenn Beaver in Support of Motion for Summary Judgment are missing pages when compared with the corresponding Exhibit from the Administrative Record. *Compare* Doc. 32, PDF pp. 35–37, 38–49, *with* Doc. 26, PDF pp. 177–80, 207–18. Thus, we will defer to the copies of the Exhibits in the Administrative Record, which do not have that defect.

**[\*17]** 331(b)(4). In any event, our review of the record shows that AO Alves reviewed the record and properly verified that the requirements of any applicable law or administrative procedure had been met. *See supra* pp. 5–6.

### C. *Issues Raised by the Taxpayer*

Second, at a CDP hearing a taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy," including appropriate spousal defenses, challenges to the appropriateness of collection actions, and proposed collection alternatives. *See* § 6330(c)(2)(A). On Form 12153, MDIA checked the box for "Offer in Compromise."[10]

The Secretary is authorized to compromise an outstanding tax liability on multiple grounds, including doubt as to liability, doubt as to collectibility, and effective tax administration. *See* § 7122(a); Treas. Reg. § 301.7122-1(b). The Secretary has discretion to accept or reject an OIC, as well as to agree to any associated terms and conditions. Treas. Reg. § 301.7122-1(c)(1); *see also Estate of Washington v. Commissioner*, T.C. Memo. 2022-4, at \*13 (first citing *Fargo v. Commissioner*, 447 F.3d at 712; and then citing Treas. Reg. § 301.7122-1(c)(1)).[11] Generally, an Appeals Officer is directed to reject any offer that is based on doubt as to collectibility if the amount offered is lower than the taxpayer's RCP. *See Mack v. Commissioner*, T.C. Memo. 2018-54, at \*10 (first citing Rev. Proc. 2003-71, § 4.02(2), 2003-2 C.B. 517, 517; and then citing *Johnson v. Commissioner*, 136 T.C. 475, 485–86 (2011), *aff'd*, 502 F. App'x 1 (D.C. Cir. 2013)). A taxpayer's RCP is the amount that the IRS could collect through administrative and judicial remedies, *see* Rev. Proc. 2003-71, § 4.02(2), 2003-2 C.B. at 517, and is generally calculated by multiplying a taxpayer's monthly income available to pay taxes by the number of months remaining in the statutory period for collection and adding realizable equity in assets, *see Mack*, T.C. Memo. 2018-54, at \*5 n.2 (citing *Johnson*, 136 T.C. at 485).

However, in some cases the IRS may accept an amount less than the RCP if there are special circumstances that justify the acceptance of

---

[10] Although MDIA checked the box "lien withdrawal" on the Form 12153, it did not pursue that argument during the CDP hearing. Accordingly, MDIA cannot raise that argument in this proceeding. *See Giamelli*, 129 T.C. at 115–16; Treas. Reg. § 301.6330-1(f)(2), Q&A-F3.

[11] The Secretary has delegated this authority to the Commissioner. *See* § 7701(a)(11); Statement of Procedural Rules, 26 C.F.R. § 601.203(a)(1).

**[\*18]** some lower amount. *See Murphy*, 125 T.C. at 309. A doubt as to collectibility offer with special circumstances is appropriate when a taxpayer does not have the ability to pay the liability in full and, on account of those special circumstances, the taxpayer has offered an amount lower than its RCP. IRM 5.8.11.3(2) (Oct. 4, 2019).[12] A doubt as to collectibility offer with special circumstances is considered using the same factors as effective tax administration offers, namely economic hardship or public policy and equity. IRM 5.8.4.2(4), 8.23.3.2(2) (note). MDIA argues that its Revised Offer should be accepted on public policy grounds in light of the special circumstances presented. The Commissioner may compromise a liability "where compelling public policy . . . considerations identified by the taxpayer provide a sufficient basis for compromising the liability." Treas. Reg. § 301.7122-1(b)(3)(ii).

The regulations do not set forth a specific standard for evaluating an OIC on the grounds of public policy or equity, but instead they provide two illustrative examples. *See Serna*, T.C. Memo. 2022-66, at \*11 (first citing Treas. Reg. § 301.7122-1(c)(3)(iv); and then citing *Hansen v. Commissioner*, T.C. Memo. 2007-56, 2007 WL 701580, at \*6, *aff'd in part sub nom. Keller v. Commissioner*, 568 F.3d 710). They include (1) a taxpayer who develops a serious illness requiring extended hospitalization that causes him to be unable to manage his financial affairs, including filing tax returns, leading to significant tax liability, and (2) a taxpayer who learns after an audit that the IRS gave him incorrect advice on which he relied and is now facing additional taxes and penalties because of that reliance. Treas. Reg. § 301.7122-1(c)(3)(iv). However, this Court has previously recognized that "[t]he Commissioner . . . must weigh a taxpayer's facts and circumstances, and he has broad discretion in deciding whether to accept such an offer." *Serna*, T.C. Memo. 2022-66, at \*11 (citing *Mason v. Commissioner*, T.C. Memo. 2021-64, at \*17–18).

The IRM provides more insight, stating that this analysis is generally "based on a combination of facts and circumstances" and "[c]ompromise is authorized on this basis only where, due to exceptional circumstances, collection in full would undermine public confidence that

---

[12] This is distinguishable from an effective tax administration offer, which is appropriate when the taxpayer has the ability to pay the liability in full (meaning its RCP exceeds the liability due) but, on account of special circumstances, the taxpayer has offered to pay less than the full amount of the liability. IRM 5.8.11.3(2). Nonetheless, both effective tax administration offers and doubt as to collectibility offers with special circumstances are considered on the same grounds. IRM 5.8.4.2(4) (May 10, 2013), 8.23.3.2(2) (note) (Aug. 21, 2023).

**[\*19]** the tax laws are being administered in a fair and equitable manner." IRM 5.8.11.3.2(1) and (2) (Aug. 5, 2015); *see also* IRM 5.8.11.5.1(1) (Oct. 4, 2019). The IRM sets forth a list of "compelling factors" to look for when examining an offer with public policy or equity considerations. IRM 5.8.11.3.2.1 (Oct. 4, 2019). These factors include, inter alia, processing errors by the IRS, criminal or fraudulent acts of a third party, the likelihood that rejecting the OIC would have a significant negative impact on the taxpayer's community, or a determination that the taxpayer was incapacitated. *Id.*

However, a doubt as to collectibility offer with special circumstances cannot be accepted if it is determined that acceptance would undermine compliance with the tax laws. Treas. Reg. § 301.7122-1(b)(3)(iii) ("No compromise to promote effective tax administration may be entered into if compromise of the liability would undermine compliance by taxpayers with the tax laws."); IRM 5.8.11.3.3(1); *see also Bergevin v. Commissioner*, T.C. Memo. 2008-6, 2008 WL 123931, at \*9. Factors supporting (but not conclusive of) a determination that compromise would undermine compliance include, but are not limited to, whether a taxpayer has taken deliberate action to avoid the payment of taxes, whether the taxpayer encouraged others to not comply with the tax laws, and whether the taxpayer's history of noncompliance weighs against acceptance of an offer. Treas. Reg. § 301.7122-1(c)(3)(ii).

We do not conduct an independent review of what would be an acceptable OIC. *See Thompson v. Commissioner*, 140 T.C. 173, 179 (2013); *Murphy*, 125 T.C. at 320; *see also Randall v. Commissioner*, T.C. Memo. 2018-123, at \*9. "If the settlement officer followed all statutory and administrative guidelines and provided a reasoned, balanced decision, the Court will not reweigh the equities." *Thompson*, 140 T.C. at 179; *see also Lipson v. Commissioner*, T.C. Memo. 2012-252, at \*9; *Fowler v. Commissioner*, T.C. Memo. 2004-163. The extent of our review is to determine whether the Appeals Officer's decision to reject the offer was arbitrary, capricious, or without sound basis in fact or law. *See Skrizowski v. Commissioner*, T.C. Memo. 2004-229; *Fowler*, T.C. Memo. 2004-163; *see also Woodral*, 112 T.C. at 23.

In its Motion for Summary Judgment, MDIA has advanced several arguments about the rejection of its Revised Offer and purported errors of fact or law (or both) that constitute an abuse of discretion. Generally, MDIA's arguments can be grouped into two categories: (1) arguments addressing the compelling factors used when evaluating OICs based on public policy or equity and (2) arguments addressing

[*20] whether the OIC would undermine compliance with the tax laws. We will discuss these arguments below.

### 1. *Public Policy or Equity: Compelling Factors*

#### a. *Consideration of Evidence*

First, MDIA argues that AO Alves failed to consider evidence related to the Revised Offer (which was based on the purported existence of special circumstances). Specifically, the notice of determination states that MDIA did "not provide verification that pension payments were not missed over the 18 years for which [MDIA] was assessed excise taxes for underfunding their pension." *See also supra* p. 10. MDIA contends that AO Alves made a mistake of fact because the May 17, 2023, letter from Mr. Furman to AO Alves states that despite not satisfying the minimum funding standards under section 430, MDIA regularly contributed funds sufficient to make all payments when they came due, and because the letter was "verified" by Mr. Beaver. We are not persuaded.

Aside from the unsupported statement in the May 17, 2023, letter, MDIA did not present, and the record does not contain, any evidence to support this unsubstantiated assertion. The case activity record explicitly states that AO Alves "considered the special circumstances cited [by] TP [and] [does] not [sic] believe compromise is warranted." In the same paragraph, AO Alves states that "TP has not provided verification that no pension payments were missed over the 18 years for which the TP was assessed excise taxes for underfunding their pension." We reject MDIA's argument that the grounds were not considered.

#### b. *Consistent Underfunding and Net Payments*

Next, MDIA argues that AO Alves abused his discretion by misunderstanding the applicable law and what the pensioners were entitled to receive under the Plan. In this regard, the notice of determination states that "the SO did not agree that consistently underfunding the pension plan qualifies as a special circumstance because, ultimately, the pensioners were paid net payments without regard to the future payments they were entitled to/promised." *See supra* p. 10.

MDIA asserts that this statement constitutes a mistake of both fact and law and thus amounts to an abuse of discretion. Specifically, MDIA argues that this statement "is based on a clearly erroneous

**[\*21]** understanding of the law. No participant in the Plan was 'entitled to/promised' future contributions to the Plan." Respondent argues that this text "should be taken in the context of [p]etitioner's submission of an offer in compromise to pay the outstanding excise taxes and [p]etitioner's financial ability to pay and should *not* be taken in the context of a statement of law on how defined benefit plans are funded and paid out."

### i.     *Context of Disputed Text*

While the statement itself is not a model of clarity, we agree with respondent about its context. The record demonstrates that AO Alves was focused on the years-long underfunding of the Plan and the resulting tax consequences. *See supra* pp. 10–11 (finding that AO Alves noted in the case activity record that MDIA had not provided verification that no Plan payments were missed over the 18 taxable years at issue, and finding that AO Alves stated that accepting the Revised Offer for less than MDIA's RCP would undermine congressional intent regarding excise taxes imposed for underfunding a plan). That focus makes sense. MDIA's underlying liabilities arise from section 4971, an excise tax imposed for failure to make the required minimum contributions to a defined benefit plan. *See* § 430. And MDIA's failure to make those minimum contributions persisted for 18 years. Understood in its context, the statement explained why relieving MDIA of its tax obligations was untenable.

### ii.     *Rejection Not Based on Disputed Text*

Even if the disputed text purported to describe the effect of MDIA's termination of the Plan—an interpretation that is not supported by the record—the statement is of no consequence. That is because it is clear that the statement was not the basis on which AO Alves rejected MDIA's Revised Offer.

The record demonstrates that MDIA's Revised Offer was not rejected on the basis of AO Alves's understanding of the legal effects of the Plan's termination. Rather AO Alves rejected the Revised Offer for the reasons set forth by the specialty group that considers offers made on public policy grounds. *See supra* pp. 12–13 (finding that AO Alves wholly incorporated the reasoning set forth in the memorandum prepared by OS Knight into the notice of determination). This reading is supported by the timeline of events surrounding the consideration of

[*22] the Revised Offer during the CDP hearing and the structure and text of the notice of determination.

A quick recap of the sequence of events is helpful here. In response to the centralized unit's preliminary rejection of its Initial Offer, MDIA sent a letter on May 17, 2023, stating that it "now seeks to compromise its liability for the extractions based on doubt as to collectibility with special circumstances." *See supra* p. 9. On June 16, 2023, AO Alves reviewed the arguments raised in MDIA's Revised Offer as set forth in the May 17, 2023, letter, and he wrote in the case activity record the now-disputed statement about the termination of the Plan. On June 23, 2023, AO Alves discussed his reasoning with Mr. Furman, who agreed to follow up with AO Alves on or before June 27, 2023.

By letter dated June 25, 2023, MDIA expressed disagreement with the reasons AO Alves stated on the June 23, 2023, call. *See supra* pp. 10–11. MDIA asked AO Alves to "reconsider [his] proposed rejection of MDIA's [Revised Offer], based on [special circumstances]," unless MDIA raised the amount of its offer to match its RCP. MDIA specifically asked that AO Alves reconsider the Revised Offer on the special circumstances presented, namely public policy grounds. Thus, at MDIA's behest, AO Alves referred the Revised Offer based on special circumstances to the specialty group that evaluates that type of offer. *See supra* p. 11.

Ultimately, OS Knight sent a memorandum to AO Alves, dated July 11, 2023, informing him that MDIA's Revised Offer did not meet non-economic hardship (i.e., public policy) criteria. *See supra* pp. 11–12. In the notice of determination AO Alves wholly adopted the reasoning set forth by OS Knight in the July 11, 2023, memorandum, not AO Alves's prior statement. The notice of determination then continues, specifically stating that "[a]fter considering *both your position and Compliance's response*, the SO determined [that] compromise for less than the Appeals RCP was not warranted." (Emphasis added.) The text of the notice of determination reveals that the decision to reject the Revised Offer was based on the reasoning set forth by OS Knight in response to MDIA's arguments. AO Alves's decision to adopt the reasoning set forth by OS Knight in the notice of determination and to include that reasoning in the notice of determination does not constitute an abuse of discretion. Additionally, the reasoning that was ultimately adopted was not itself an abuse of discretion. Further, even if the disputed text purported to describe the effect of MDIA's termination of the Plan—which, again, is not supported by the record—that text did

**[\*23]** not closely relate to the substance of the reasoning that AO Alves adopted from OS Knight's memorandum.

While referral of the Revised Offer to the specialty group for initial consideration would have been more consistent with the IRM, any procedural misstep was rectified when AO Alves ultimately referred the Revised Offer to that group. *See* IRM 8.22.7.4.2(2) (note) (Aug. 26, 2020), 5.8.11.5.1. Moreover, the now-disputed text, as it appears in the notice of determination, provides an accurate account of the consideration of MDIA's Revised Offer and the special circumstances presented during the hearing. Given that it is not the basis of Appeals' determination it constitutes at most harmless error, as we explain below.

### iii.     *Harmless Error*

The harmless error rule can apply to administrative cases, and an error warrants remand only if it prejudices a party's "substantial rights." An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the "perceived fairness, integrity, or public reputation of judicial proceedings." *Shinseki v. Sanders*, 556 U.S. 396, 411–12 (2009). Or, as stated by the Third Circuit, an error is harmless "when it is highly probable that [it] did not affect the outcome of the case." *See Chavez-Chilel v. Att'y Gen. U.S.*, 20 F.4th 138, 144 (3d Cir. 2021) (quoting *Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011)).

On the record before us and as an alternative ground, we find that AO Alves's statement described the tax consequences of underfunding the Plan, not the effect of its termination. At MDIA's insistence, AO Alves sent MDIA's Revised Offer to the appropriate specialty group for consideration. *See supra* p. 11. OS Knight considered MDIA's Revised Offer, and that reasoning was ultimately adopted in the notice of determination. The text of the notice of determination makes clear that the disputed text was not the basis on which AO Alves rejected MDIA's Revised Offer. *See ECM BioFilms, Inc. v. FTC*, 851 F.3d 599, 612 (6th Cir. 2017) (holding that even if the agency reached an erroneous conclusion, under the Administrative Procedure Act such error was harmless because the agency relied on other non-erroneous grounds); *Delek Refin., Ltd. v. Occupational Safety & Health Rev. Comm'n*, 845 F.3d 170, 184 n.18 (5th Cir. 2016) (holding that the agency's refusal to consider expert testimony constituted harmless error when it was clear that the Commission based its conclusion on other grounds). On the basis of the undisputed facts and the text of the notice of determination,

**[\*24]** we find that the disputed statement constitutes at most harmless error. *See Romano-Murphy v. Commissioner*, 152 T.C. 278, 310 (2019) (citing *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004)), *supplementing* T.C. Memo. 2012-330.

c.     <em>Reasonable Collection Potential</em>

Next, MDIA raises an argument about the RCP calculation. At the outset, special circumstances offers based on doubt as to collectibility require the same full financial analysis as regular offers based on doubt as to collectibility in order to determine the taxpayer's RCP and an acceptable offer amount. *See* IRM 5.8.11.5.2(1) (Aug. 5, 2015). In the notice of determination AO Alves recalculated the centralized unit's RCP and determined the Appeals RCP of $2,561,465. *See supra* p. 10. MDIA claims that AO Alves erred when computing its RCP "[b]y refusing to acknowledge the value of MDIA is adversely affected by the IRS liens, which secure the liability, the IRS made a mistake of fact and abused its discretion." MDIA cites *W. Zintl Construction, Inc.*, T.C. Memo. 2017-119, at \*11–12, wherein this Court held that Appeals' rejection of an OIC on the basis of an RCP calculation that included the taxpayer's going-concern value, but did not factor in the outstanding tax liabilities, was not reasonable.

MDIA's argument is unfounded. The record indicates that no part of the equity portion of MDIA's RCP was based on MDIA's going-concern value. Rather the RCP was based on MDIA's assets (mainly the cash in its bank account, but also its real estate, owned and leased vehicles, and tools and equipment) and future income. We find *W. Zintl Construction* inapposite. In that case the RCP calculation included the taxpayer's going-concern value but did not factor in the outstanding tax liabilities. *Id.* In this case the RCP calculation did not include MDIA's going-concern value as part of its net equity in assets. Therefore, it was not an abuse of discretion for AO Alves to reject the argument.

We also note that the centralized unit's RCP and Appeals' RCP erred, rather significantly, in MDIA's *favor*. On Form 433–B, taxpayers are asked to "[e]nter the average gross monthly income" and "average gross monthly expenses" for their business based on the last 6 through 12 months of financial information. On MDIA's initial Form 433–B, MDIA provided an average over six months; it reflected average gross monthly income of $702,887 and average monthly business expenses of $645,967, which result in a remaining average monthly income of

[*25] $56,920.[13] On the updated Form 433–B MDIA reflected remaining average monthly income of $61,782. *See supra* p. 10.

Both the centralized unit and Appeals considered the amount of remaining average monthly income as the amount of income over the entire six-month period, not a monthly average. Ultimately, AO Alves calculated MDIA's remaining monthly income as $123,384[14] over a 12-month period, when in actuality it totaled approximately $741,384 (or $61,782 × 12). Thus, Appeals undercalculated MDIA's RCP to the tune of approximately $618,000 (or $741,384 − $123,384). In any event, AO Alves appropriately rejected MDIA's Revised Offer and MDIA refused to raise the amount of its Revised Offer to match the generously low RCP calculation. Indeed, MDIA's updated Form 433–B supports that it had a greater ability to pay than the Appeals RCP.

To the extent that MDIA argues that "future income is uncertain and cash must be preserved," we find the argument unsupported. MDIA does not cite any specific provision to support its argument, but rather it generally asserts that this statement ignores the "uncontroverted" evidence it submitted. When an Appeals Officer follows the IRS's guidelines to ascertain a taxpayer's RCP and rejects the taxpayer's OIC on that basis, we have found no abuse of discretion. *See Estate of Baumgardner v. Commissioner*, T.C. Memo. 2024-80, at *14 (first citing *Murphy*, 125 T.C. at 321; and then citing *Lemann v. Commissioner*, T.C. Memo. 2006-37, 2006 WL 549206, at *9); *Siebert v. Commissioner*, T.C. Memo. 2021-34, at *23. Further, in cases where Appeals has

---

[13] These numbers reflect the monthly averages over the six-month period, as evidenced by statements in the letter attached to MDIA's August 25, 2022, OIC package. Therein, MDIA acknowledges that it has "average total monthly business income of $702,887[,] . . . total monthly business expenses of $645,967, and . . . remaining monthly income of $56,920." These statements reflect that these numbers are indeed monthly averages and not the total remaining monthly income over the six-month period.

[14] On the updated Form 433–B, MDIA listed average monthly total business income of $741,887, comprising $741,795 of gross receipts and $92 of dividends. In calculating MDIA's ability to pay, AO Alves appears to have based his calculation solely on the amount of gross receipts (i.e., $741,795) while excluding the average monthly dividends of $92. It appears that AO Alves then assumed that $741,795 was the amount of total business income over six months, rather than the amount of business income for a single month that the amount actually represents. On the basis of that assumption, he evidently divided the amount by six, arriving at an erroneous amount of total monthly income of $123,633. AO Alves then reduced that amount by the amount of total expenses of $113,351, which he calculated through the same means, to arrive at a net monthly income of $10,282. AO Alves then extrapolated this amount over 12 months, computing total income over the next 12 months as $123,384.

[*26] *overestimated* a taxpayer's RCP, this Court has held that "even if the settlement officer made errors in calculating * * * [the taxpayer's] RCP, we will uphold his decision when the taxpayer's offer is far less than the correct RCP." *Abraham v. Commissioner*, T.C. Memo. 2021-97, at *15 (quoting *Alphson v. Commissioner*, T.C. Memo. 2016-84, at *25). Here, where Appeals erred, rather substantially, in MDIA's favor by *underestimating* its RCP, we look to the RCP calculation relied upon by the Appeals Officer. Even in doing so, MDIA's Revised Offer was substantially lower than Appeals' RCP, and so it was not an abuse of discretion to reject the offer. We see no abuse of discretion.

### d.  *Fairness*

Next, MDIA raises two arguments addressing the concept of fairness. The IRM states that "[c]ompromise on public policy or equity grounds is not authorized based solely on a taxpayer's belief that a provision of the tax law is itself unfair." IRM 5.8.11.3.2.1(7). The IRM continues, stating that "[w]here a taxpayer is clearly liable for taxes, penalties, or interest due to operation of law, a finding that the law is unfair would undermine the will of Congress in imposing liability under those circumstances." *Id.*

In the notice of determination, AO Alves quoted the text of IRM 5.8.11.3.2.1(7), as above. Then later in the notice of determination, AO Alves stated that MDIA confirmed that it "did not adequately fund the pension plan for which the excise taxes were imposed. United States Tax Code Section 430 provided for the taxes for not fully funding the pension plan and Appeals cannot undermine the will of Congress' intent regarding excise taxes imposed for underfunding your pension plan." *See supra* pp. 10–11.

MDIA contends that it has not made a fairness argument in its OIC or any of its correspondence, so the quotation of IRM 5.8.11.3.2.1(7) is "clearly erroneous, is a mistake of fact and law" and thus is an abuse of discretion.[15] Further, MDIA alleges that AO Alves was confused about his role insofar as his job was not to interpret the will of Congress, but

---

[15] MDIA also contends that AO Alves failed to consider its June 25, 2023, letter, which the parties stipulated, outside of the Administrative Record. MDIA contends that this constitutes an abuse of discretion. We disagree, as the case activity record clearly reflects that AO Alves considered the letter, and that it was the catalyst for sending MDIA's Revised Offer to the specialty group that considers such offers.

**[\*27]** rather to apply the Code. Both arguments fail, and we find the discussion in the notice of determination apt.

To the extent that MDIA contends that it has not made a fairness argument, we disagree. As explained in the notice of determination, MDIA asked the IRS to use its authority under section 7122 to compromise the outstanding liability because, inter alia, despite not satisfying the requirements of section 430, MDIA purports to have made regular contributions sufficient to pay all retirees' payments when they came due. Such an argument is fundamentally one about fairness. *See West v. Commissioner*, T.C. Memo. 2010-250, 2010 WL 4780323, at \*10–11 (finding that a taxpayer's arguments "[e]ach represent[] a claim that a provision of the tax law is unfair"); *see also, e.g.*, IRM 5.8.11.3.2.1(7) (note) ("[T]he taxpayers are essentially claiming that Congress enacted unfair statutes and are arguing that the Service should use its compromise authority to rewrite those statutes based on a perception of unfairness. Compromise for that reason would not promote [effective tax administration]. The compromise authority under Section 7122 is not so broad as to allow the Service to disregard or override the judgments of Congress."); IRM 5.8.4.2(4) (providing that the factors considered for effective tax administration offers are the same as those considered for doubt as to collectibility offers with special circumstances).

MDIA is liable for, and the government seeks to collect, unpaid excise taxes pursuant to section 4971(a) for the failure to meet required minimum funding standards on its qualified Plan. The excise tax under section 4971(a) is mandatory if there is an unpaid minimum required contribution for any plan year. *See, e.g.*, *Wenger v. Commissioner*, T.C. Memo. 2000-156, 2000 WL 575223, at \*2 (citing *D.J. Lee, M.D., Inc. v. Commissioner*, 92 T.C. 291, 300 (1989), *aff'd*, 931 F.2d 418 (6th Cir. 1991)). AO Alves rejected MDIA's argument because it would undermine the will of Congress in imposing the excise tax pursuant to section 4971(a). AO Alves's decision was consistent with the guidance set forth in the IRM, and it does not constitute an abuse of discretion. *See* IRM 5.8.11.3.2.1(7). To MDIA's latter argument, we find that AO Alves faithfully applied the Code and administrative procedure and that there was no abuse of discretion.

e.     *Harm to Community*

Next, MDIA takes issue with several statements in the notice of determination relating to the conclusion that rejecting the Revised Offer with special circumstances and pursuing other collection alternatives

**[\*28]** would not have a significant negative impact on the community. Generally, compromise for special circumstances may be appropriate "where there is clear and convincing evidence that rejecting the OIC, and pursuing other collection alternatives, would have a significantly negative impact on the community in which the taxpayer lives or does business." IRM 5.8.11.3.2.1(5). Or stated another way, "[t]he taxpayer provides essential services to the community that would be lost if the tax liability was collected in full." *Id.* We will discuss each of MDIA's arguments in turn.

First, in the notice of determination AO Alves stated that MDIA "failed to provide *any* evidence [that] full payment of the tax liability would result in a negative impact on the community." (Emphasis added.) MDIA contends that this statement constitutes a mistake of fact, and thus is an abuse of discretion, because its May 17, 2023, letter states that harm would occur to the community, and the letter was "verified" by Mr. Beaver.

MDIA's argument is unavailing. The record reflects that AO Alves considered the arguments raised in MDIA's May 17, 2023, letter.[16] Indeed, the notice of determination quoted and considered the specific grounds raised by MDIA in the May 17, 2023, letter verified by Mr. Beaver. *See supra* pp. 9–10. AO Alves dispensed with those arguments, noting that MDIA has stated numerous times that the code enforcement industry is highly competitive and explaining that if MDIA truly provided a unique service that no one else could, then there would be no competition. Only after dispensing with MDIA's arguments did AO Alves conclude that MDIA "failed to provide any evidence the full payment of the tax liability would result in a negative impact on the community." MDIA's argument seeks to parse the text of the notice of determination without considering the entirety of the reasoning it sets forth, as supported by the broader Administrative Record. *Accord Melasky*, 151 T.C. at 106; *see Serna*, T.C. Memo. 2022-66, at \*8. On this point we think the notice of determination is well-reasoned and that it does not amount to an abuse of discretion.

Second, MDIA states that it was a mistake of fact and law, and therefore an abuse of discretion, for the notice of determination to state that "[t]he businesses that would typically qualify under negative

---

[16] In its Motion for Summary Judgment MDIA specifically argues that Appeals failed to consider the arguments raised in MDIA's May 17, 2023, Letter. MDIA does not address the arguments raised in its June 25, 2023, letter.

[*29] impact on the community are not for profit, charitable, or exempt organizations." We disagree. As a starting point, this statement in the notice of determination is almost a direct quotation from the IRM. *See* IRM 5.8.11.3.2.1(5). To the extent that an Appeals Officer relies on guidance in the IRM, such reliance does not constitute an abuse of discretion. *See Siebert*, T.C. Memo. 2021-34, at *23. Further, MDIA specifically focuses on the notice's use of the phrase "[t]ypically qualify," in relation to businesses, and maintains that any reliance on the phrase is a mistake of law. However, this phrase contemplates that under appropriate circumstances any taxpayer may be eligible. Accordingly, it was not an abuse of discretion to use the quoted text in the notice of determination.

Third, the notice of determination recounted MDIA's argument that if it were to stop providing inspection services such cessation would have a significant negative impact on the communities MDIA serves because the other small entities could not compensate for the loss of MDIA. In response AO Alves stated that MDIA's argument "is based on the assumption that failing to accept [the] $250,000 OIC would cause [MDIA] to cease operations. You did not establish this was the case." AO Alves continued, stating that "[b]ased on the updated financial information you provided to Appeals, you are a profitable business, and you did not establish why you could not utilize available assets and income to increase the OIC to the Appeals RCP."

MDIA asserts that it was a mistake of fact and law to conclude that it did not establish that failure to accept the $250,000 OIC would cause MDIA to cease operations and points generally to the May 17, 2023, letter verified by Mr. Beaver. However, AO Alves's reliance on the financial information provided by MDIA was reasonable, as was his conclusion—also based on MDIA's financial information—that MDIA was profitable. We likewise see that AO Alves reasonably relied on MDIA's financial information to conclude that it had the capacity to pay significantly more than the amount offered and that MDIA had not shown that failure to accept the OIC would cause it to cease operations. There is no abuse of discretion here.

Fourth, MDIA asserts that it was a mistake of fact and law to conclude that MDIA did not establish why it could not increase its OIC to the Appeals RCP and argues that the Appeals RCP "does not recognize that future income is uncertain and cash must be preserved." We are, once again, not persuaded by MDIA's arguments. MDIA does not cite any specific provision to support its argument but rather

[*30] generally asserts that this statement ignores the "uncontroverted" evidence submitted by MDIA. AO Alves's conclusion was reasonable, especially given that MDIA's updated Form 433–B supports its ability to pay an amount greater than the Appeals RCP. When an Appeals Officer follows the IRS's guidelines to ascertain a taxpayer's RCP and rejects the taxpayer's OIC on that basis, we have found no abuse of discretion. *See Estate of Baumgardner*, T.C. Memo. 2024-80, at *14. Accordingly, we see no abuse of discretion here.

### 2. *Whether Compromise Would Undermine Compliance with Tax Laws*

Finally, MDIA disputes AO Alves's reasoning regarding the existence of any perceived benefit from its noncompliance with the tax laws. AO Alves cited the applicable provision of the IRM in the case activity record. *See supra* pp. 10–11. In relevant part the IRM states that "[c]ompromise under the [effective tax administration] economic hardship or non-economic hardship provisions are permissible if acceptance does not undermine compliance. The public should not perceive that the taxpayer whose offer is accepted benefited by not complying with the tax laws." IRM 5.8.11.3.3(1).

The notice of determination states that "Appeals cannot disadvantage those companies that follow the law by accepting less than the Appeals RCP. The public should not perceive that by accepting your OIC, you unfairly benefited from not complying with the law." MDIA argues that Appeals abused its discretion because it is "unclear what the IRS believed the public would 'perceive' if it accepted MDIA's OIC." Further, MDIA maintains that if the IRS accepted the OIC the public would perceive that the IRS did the right thing by properly interpreting the IRM.

MDIA's argument is not persuasive. First, to the extent that MDIA relies on the IRM, we note that the IRM is not a source of taxpayer rights. *See Fargo v. Commissioner*, 447 F.3d at 713. Second, on the basis of the facts and circumstances, it was reasonable to conclude that other taxpayers would perceive that MDIA benefited by not complying with the tax laws. *See Smith v. Commissioner*, T.C. Memo. 2007-73, 2007 WL 1364410, at *6, *aff'd in part, vacated in part sub nom. Keller v. Commissioner*, 568 F.3d 710. Indeed, MDIA failed to meet the section 430 minimum funding standards for its Plan for the 18 taxable years at issue, and it is was reasonable to conclude that MDIA unfairly benefited from its failure to do so. We see no abuse of discretion here.

**[\*31]** D.   *Balancing Analysis*

MDIA did not allege in the Petition or otherwise argue that AO Alves failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *See* § 6330(c)(3)(C). Accordingly, it has conceded the issue. *See* Rule 331(b)(4); *see also Ansley v. Commissioner*, T.C. Memo. 2019-46, at \*19. In any event, AO Alves concluded in the notice of determination that the proposed levy action balanced the need for the efficient collection of taxes with MDIA's legitimate concerns about the intrusiveness of such action because MDIA's ability to pay exceeds the amount of its offer. Further, AO Alves stated that Appeals did not find any special circumstances or public policy concerns that warranted acceptance of an offer for less than the Appeals RCP. Given MDIA's refusal to increase the amount of its offer, the IRS had little choice but to collect the outstanding liability by means of levy. We see no abuse of discretion.

III.   *Conclusion*

There are no disputes of material fact, and judgment may be rendered as a matter of law. Finding no abuse of discretion, or that if there is error it is harmless, we will grant respondent's Motion for Summary Judgment and sustain Appeals' determination to uphold the proposed levy action for the taxable years at issue.

We will deny MDIA's Motion for Summary Judgment. We have considered all arguments made by the parties and, to the extent they are not addressed herein, we deem them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*